UNITED STATES of America, Plaintiff,

v. .

Philip FALKOWSKI, Defendant.

No. A92–154 CR (JKS).

United States District Court,
D. Alaska.

Sept. 25, 1995.

Matthew Claman, Anchorage, for petitioner.

Elizabeth S. O'Leary, Assistant United States Attorney, Anchorage, and Robert C. Bundy, United States Attorney, Anchorage, and Stefan D. Cassella, Deputy Director Asset Forfeiture Office, Washington, DC, for United States.

## ORDER DENYING MOTION FOR POST CONVICTION RELIEF.

SINGLETON, District Judge.

Philip Falkowski, moves pursuant to 28 U.S.C. § 2255 to vacate his conviction for various drug offenses on the ground that contemporaneous civil forfeitures, stemming from the same criminal conduct, resulted in double jeopardy in violation of the Fifth Amendment to the United States Constitution. Docket Nos. 1047, 1107, and 1129. The motion is opposed. Docket Nos. 1092 and 1130. Magistrate Judge Roberts, to whom this matter was initially referred, recommends that the motion be denied. Docket Nos. 1116 and 1131. After an independent and de novo review of the record, this Court agrees and accepts Judge Roberts' recommendation.

## STATEMENT OF RELEVANT FACTS

On October 6, 1992, Falkowski and co-defendants were indicted on charges related to the cultivation and distribution of marijuana in the Fairbanks area. Falkowski was charged as part of a continuing conspiracy headed by John Collette, and with conducting a continuing criminal enterprise and related offenses. The indictment contained

criminal forfeiture counts addressing property in which Falkowski was alleged to claim an interest.

On October 7, 1992, the day following the return of the indictment, the government filed civil forfeiture proceedings against real property located at 1804 Caribou Way in Fairbanks, Alaska. This property had also been listed in the indictment. The criminal case was brought in Anchorage while the civil case proceeded in Fairbanks. Falkowski was served but did not file a claim regarding the civil forfeiture of the Caribou Way property, while others with interest in the real estate did file claims.

On October 14, 1992, Falkowski was arrested and simultaneously served with notice of the arrest of the property at 1804 Caribou Way.

On November 5, 1992, the United States sought entry of default against Falkowski in the civil forfeiture case. The request made no reference to the pending criminal prosecution.

On November 13, 1992, Falkowski pled guilty to some of the charges in the indictment pursuant to a plea agreement anticipating that the other counts would be dismissed. The charges to which Falkowski pled included conducting a continuing criminal enterprise, money laundering, and investing drug proceeds in a business enterprise. As part of the plea agreement, Falkowski agreed to forfeit any property 1) which he acquired as a result of drug trafficking and 2) to assist the government in locating and seizing any such property. The plea agreement did not specify whether the property at 1804 Caribou Way would be forfeited civilly or criminally. In fact, the plea agreement made no specific reference to the Caribou Way property or the civil forfeiture proceeding.

On December 2, 1992, the government made a second request to enter default against Falkowski in the civil forfeiture action. On December 14, 1992, the clerk entered a default against all defendants or claimants in the forfeiture action who had not filed claims, answers or responses. The defaulted parties included Falkowski.

On February 2, 1993, the United States moved for a decree of forfeiture, relying in part on the declaration and order of default. The 1804 Caribou Way property was ordered forfeited to the United States by an order entered on February 10, 1993.

On July 28, 1993, the district court sentenced Falkowski to identical concurrent seventy two month sentences on each of the counts of conviction. The judgement of conviction makes no reference to forfeiture of the Caribou Way property.

Falkowski filed this motion to vacate on April 5, 1995.

## DISCUSSION

■ Falkowski contends that the civil forfeiture of some of his property coupled with his significant prison sentence constitutes multiple punishments for the "same offense" which is barred by the double jeopardy clause of the United States Constitution. He contends that the default judgment forfeiting his property preceded his sentence and, therefore, his criminal sentence should be vacated. The Fifth Amendment provides that "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb ..." U.S. CONST. amend. V. The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Although the text mentions only harm to life or limb, the Fifth Amendment covers imprisonment and monetary penalties as well. *See United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). A civil forfeiture proceeding is not a criminal prosecution. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361–62, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984). Thus, this Court is only concerned in this case with the punishment prong of the rule.

There are three reasons why Falkowski's attack on his criminal sentence must fail: First, as Judge Roberts found, jeopardy attached in the criminal case before the default judgment was entered in the civil proceeding.

Second, by entering a plea of guilty, Falkowski waived or, more accurately, forfeited the right to collaterally attack his conviction and sentence on double jeopardy grounds. Third, the civil forfeiture proceeding was not based upon the same offense for which Falkowski was criminally prosecuted.

## THE RELATIVE TIMING OF PLEA AND FORFEITURE

■ Where a defendant contends that he was subject to multiple punishments for the same offense, it is necessary to determine the point at which jeopardy attaches because first in time is apparently first in right. *See, e.g., United States v. Faber,* 57 F.3d 873 (9th Cir.1995); *United States v. Barton,* 46 F.3d 51, 52 (9th Cir.1995); *United States v. Kearns,* 61 F.3d 1422, 1428 (9th Cir.1995). Jeopardy attaches in a criminal case when the jury is sworn or, as in this situation, when the case settles without trial, jeopardy attaches when a plea is accepted. *Faber,* 57 F.3d at 874–75. In the instant case, Falkowski entered an unconditional plea on November 13, 1992. While there is some uncertainty regarding the point at which jeopardy "attaches" in a civil forfeiture proceeding, the consensus seems to be that the earliest jeopardy attaches is when an answer is filed in the civil forfeiture proceeding. *Barton,* 46 F.3d at 52. *See also United States v. Wong,* 62 F.3d 1212, 1214 (9th Cir. 1995) (citing *Barton,* 46 F.3d at 52). Falkowski never filed an answer and, so under this Court's holding in *United States v. Collette,* 892 F.Supp. 232 (D.Alaska 1995), jeopardy never attached. *Accord United States v. Torres,* 28 F.3d 1463 (7th Cir.1994) *cert. denied* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); *See also United States v. Cretacci,* 62 F.3d 307, 310 (9th Cir.1995). Alternatively, the only other significant date would be the entry of default judgment against Falkowski on February 10, 1993. Until final judgment was entered, Falkowski could still seek to reclaim the property. *United States v. A Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Ave., Rumson, New Jersey,* 507 U.S. 111, ——, 113 S.Ct.

1126, 1136, 122 L.Ed.2d 469 (1993) (until judgment entered, the government does not own property). Judge Roberts is, therefore, correct that the civil forfeiture of the Caribou Way property does not impact Falkowski's criminal sentence. *See also United States v. Stanwood,* 872 F.Supp. 791, 798–801 (D.Or. 1994).

## FALKOWSKI'S GUILTY PLEA FORFEITED ANY DOUBLE JEOPARDY CLAIM

■ In a number of decisions, the United States Supreme Court has distinguished between the forfeiture of constitutional rights and the waiver of constitutional rights. *See, e.g., United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). A forfeiture occurs where the person possessing a right fails to timely assert it before a tribunal having jurisdiction over that right. Forfeiture is automatic and does not require evidence that the person possessing the right intended to give it up or was even aware of its existence. In contrast, a true waiver is the "intentional relinquishment or abandonment of a known right." *Olano,* —— U.S. at ——, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). As the Supreme Court has noted, some constitutional rights are forfeitable while others require a true waiver to be lost. The Court seems to be moving in the direction of holding that where a defendant is represented by counsel and provided a forum in which to assert her constitutional rights, she "forfeits" them by failing to make a timely assertion. In contrast, where there is a police interrogation, a defendant lacks counsel and a proper contemporaneous forum and will only lose her rights by a true waiver. *See, e.g., Andrew v. State,* 694 P.2d 168, 172–74 (Alaska Ct.App. 1985) (Singleton, J. concurring).

■ In *United States v. Broce,* 488 U.S. 563, 569–74, 109 S.Ct. 757, 762–65, 102 L.Ed.2d 927 (1989), the Supreme Court held that a person pleading guilty to an offense forfeits any double jeopardy claim he might have.[1] The *Broce* Court, however, recog-

---

1. Forfeiture is the loss of a right through failure to timely assert it; waiver is the intentional relin-

nized a narrow exception to this forfeiture rule where " '... judged on its face, the charge is one which the State may not constitutionally prosecute.' " *Broce*, 488 U.S. at 575, 109 S.Ct. at 765 (quoting *Menna v. New York*, 423 U.S. 61, 63, n. 2, 96 S.Ct. 241, 242, n. 2, 46 L.Ed.2d 195 (1975) and citing *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)). To avail himself of the exception, a defendant seeking to collaterally attack his conviction must satisfy two requirements: first, show that his double jeopardy claim barred his prosecution, not only his punishment and second, show that the bar was apparent from the record in the criminal case at the time his plea was accepted. Under this second prong, a defendant must also show that the bar did not require an evidentiary hearing at which the record in other proceedings would be consulted. Falkowski fails both prongs of the test, as will virtually all defendants seeking to collaterally attack their convictions by raising double jeopardy claims based on civil forfeitures for the first time in a § 2255 proceeding.

■ As this Court saw in *Collette*, 892 F.Supp. 232, a civil forfeiture whether in court or before an agency, at most, impacts potential punishment. It does not prevent prosecution. In other words, it does not give the defendant a right not to be hauled into court at all upon the felony charge because the very initiation of proceedings against him operated to deny him due process of law. While the issue of forfeiture was discussed in Falkowski's plea agreement, neither the agreement nor the discussions regarding forfeiture cross-referenced any civil proceedings. Falkowski never specifically objected to his sentence on double jeopardy grounds. Even if he had, the court could not have resolved the matter on the existing sentencing record but would have had to hold an evidentiary hearing to relate the civil forfeitures to the various charges pending against the Collette organization and, particularly, the charges pending against Falkowski. *See, e.g., United States v. One 1978 Piper Cherokee Aircraft*, 37 F.3d 489 (9th Cir.1994) (evidentiary hearing necessary to relate prior forfeiture to subsequent criminal prosecution). Of course, wherever an evidentiary hearing is required, it is not possible to find that " 'judged on its face, the charge is one which the State may not constitutionally prosecute.' " *See Broce*, 488 U.S. at 575, 109 S.Ct. at 765 (quoting *Menna*, 423 U.S. at 63, n. 2, 96 S.Ct. at 242, n. 2).

Some of the cases applying *Broce* to the interplay between civil forfeitures and subsequent criminal prosecutions seem to be confused regarding the record from which a court must determine whether the *Broce* rule or the *Menna* exception apply. *Quinones–Ruiz v. United States*, 873 F.Supp. 359, 362–63 (S.D.Cal.1995); *Oakes v. United States*, 872 F.Supp. 817, 820–23 (E.D.Wash.1994) (mistakenly looking to both the record in the criminal proceeding and the record in the civil proceeding). *Stanwood*, 872 F.Supp. at 796–97 (mistakenly looking to both the record in the civil forfeiture case and the crimi-

quishment or abandonment of a known right. *Olano*, —— U.S. at ——, 113 S.Ct. at 1777. Generally, the Supreme Court is moving away from a practice that requires formal waivers before a defendant may lose the right to assert a constitutional violation to a practice that requires a defendant to assert his rights or lose them. *See Andrew*, 694 P.2d at 172–74 (Singleton, J. concurring). In current U.S. Supreme Court jurisprudence, a forfeiture rule is applied where a defendant, aided by counsel, has a reasonable opportunity to raise the issue after researching the law and investigating the facts. Waiver seems limited to those situations where the defendant acts alone, without the assistance of counsel, and outside of a formal judicial proceeding. Just as the defendant in *Broce* plead guilty in a formal proceeding, with assistance by counsel after a reasonable opportunity to prepare on the law and the facts, Falkowski was also sen-

tenced at a formal proceeding, with assistance of counsel, after a reasonable opportunity to review the law and the facts before sentencing. Thus, it was reasonable for the Supreme Court to apply a forfeiture rule in *Broce* and just as reasonable to assume that it would extend the forfeiture rule to cover Falkowski. *See Broce*, 488 U.S. at 570–75, 109 S.Ct. at 762–65 (explaining why a forfeiture rule rather than a waiver rule was chosen). Thus, it appears that the court in *Stanwood*, 872 F.Supp. at 796–97 errs in mistakenly concluding that a true waiver must be shown. It is the failure to assert a double jeopardy claim that forfeits it, not a specific reference to it in the plea agreement. By the same token, Falkowski is in error by confusing forfeiture and waiver when he suggests that the failure of the plea agreement to expressly mention the civil forfeiture precludes a finding that he forfeited the right to claim double jeopardy in a collateral attack on his conviction.

nal prosecution case).[2] The Supreme Court in *Broce* could not have been more clear: "In neither *Blackledge* nor *Menna* did the defendants seek further proceedings at which to expand the record with new evidence. In those cases, the determination that the second indictment could not go forward should have been made by the presiding judge at the time *the plea was entered on the basis of the existing record.* Both *Blackledge* and *Menna* could be (and ultimately were) resolved without any need to go beyond *that record.*"

*Broce,* 488 U.S. at 575, 109 S.Ct. at 765 (emphasis added).

In this case, because the record in the civil forfeiture proceeding was not part of the record in the criminal prosecution at the time of the plea, and virtually never will be, and the indictment in the criminal prosecution did not reference the civil forfeiture, and virtually never will, it necessarily follows that the *Menna* exception to the *Broce* rule has no application to Falkowski's case. In fact,

proper consideration of *Broce* suggests that the *Menna* exception will almost never apply to a separate civil forfeiture because it will not be referenced in the criminal indictment or the criminal record at the time of the plea. It is important to stress that the only part of the record in the criminal proceeding where parallel proceedings might be mentioned is in the pre-sentence report and that report is customarily prepared after and not before the plea is taken.[3]

Consequently, Falkowski waived any double jeopardy claim based on a civil forfeiture by pleading guilty in the criminal case.[4]

## THE CIVIL FORFEITURE WAS NOT BASED UPON THE SAME OFFENSE

The Fifth Amendment prevents inter alia multiple punishments for the same offense. Falkowski argues that his civil forfeiture and criminal prosecution comprised the same of-

**2.** *Oakes* is also in error regarding the timing of the record review. The *Oakes* court seems to focus on the record as it exists at the time of the collateral attack including, no doubt, the appended materials from both the civil and criminal proceedings. *Broce* cautions, however, that the focus must be on the record in the criminal proceeding at the time the plea is taken, not at the time the collateral attack is considered. *Broce,* 488 U.S. at 575, 109 S.Ct. at 765. Reference to the "face of the indictment" is confusing because the indictment will not reference the contemporaneous civil forfeiture. *See also Stanwood,* 872 F.Supp. at 796–97 (making the same error).

**3.** In *United States v. Wong,* 62 F.3d 1212 (9th Cir.1995), the court declined to find waiver because the civil forfeiture was before the criminal court judge at the time of the plea. 1215 n. 1. This would be unusual. However, it apparently occurred in that case which distinguishes it from this case. Falkowski does not suggest that anything in the criminal file at the time of his plea would have alerted the judge taking the plea to the existence of parallel civil forfeiture proceedings or suggested the double jeopardy argument that Falkowski now makes.

**4.** It is true that the United States Supreme Court suggests in *Olano* that a litigant can attack forfeited errors on direct appeal under the plain error doctrine. It is also true that the *Menna* exception to the *Broce* rule seems to be an application of plain error because it focuses on the

record at the time the plea was taken and suggests that waiver is excused only if the problem should have been evident to the trial judge who took the plea. This Court assumes that plain errors can be argued in the trial court up to the point of final judgment even if forfeited at an earlier time. Falkowski, however, is not challenging his charges prior to judgment or on direct appeal. Therefore, it is not enough for him to show plain error; he must meet the stricter standard of cause plus prejudice. *See Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982). *See Steele v. Young,* 11 F.3d 1518 (10th Cir.1993) (applying cause and prejudice test to forfeited double jeopardy claims). Falkowski has not attempted to meet this test. Some courts have found cause and prejudice in this context on the basis of the novelty of the issue. *See, e.g., United States v. Ursery,* 59 F.3d 568 (6th Cir.1995) *compare Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). It would be difficult for Falkowski to make this argument because it would put him in a logical dilemma. If the interplay between civil forfeiture, criminal prosecution and the double jeopardy clause is so "novel" that Falkowski is excused from raising the issue, then it would appear to be too novel to receive retroactive application. *See, e.g., Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (new rule if the result not dictated by precedent existing at the time the defendants conviction became final). While the *Teague* court considered collateral review of a state court judgment, courts generally apply similar rules in evaluating collateral attacks on federal convictions.

fense and relies upon *United States v. $405,-089.23 United States Currency*, 33 F.3d 1210 (9th Cir.1994). That decision does not, however, specifically address the issue or discuss the definitive decision determining whether two offenses are the same for double jeopardy purposes. *See United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In *Dixon*, the Supreme Court overruled *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) and disapproved the dictum suggested in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) that prosecuting someone a second time based on evidence used to convict him of a related crime on another occasion would implicate double jeopardy. *Dixon*, —— U.S. at ———–——, 113 S.Ct. at 2861–2863. The Court held that to determine whether successive prosecutions involve the same offense, the Supreme Court will look only to the same elements test derived from *Blockburger v. United States*, 284 U.S.

299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (holding that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not"). *Id.* *Dixon*, by overruling *Grady*, cast doubt on using *Vitale* to create lesser included offenses by reference to evidence and conduct rather than basic elements. *Id.*[5]

What then are the elements of a criminal offense and, by extension, of a civil claim? The elements of a claim or charge constitute the minimum which the plaintiff must prove to prevail. Generally, the elements of a criminal charge are sketched in the indictment, and the elements of a civil claim are suggested in the complaint. But, at least in this Court, neither the indictment nor the complaint go to the jury nor control what the

5. In *Vitale*, the Court dealt with the following situation. A juvenile struck and killed two children while recklessly driving his vehicle. He was initially charged and convicted of the misdemeanor offense of failing to reduce speed and later with traffic manslaughter. The highest court of the state applied an evidence-conduct gloss to the double jeopardy protection and precluded the manslaughter prosecution. On certiorari to the United States Supreme Court, the case was remanded, and the majority assumed arguendo that if the government relied upon evidence of failing to timely stop as a predicate for finding recklessness, under perhaps a violation of ordinance rationale, then a serious double jeopardy question would arise. *Vitale*, 447 U.S. at 421, 100 S.Ct. at 2267. However, it also held that it was possible to foresee a manslaughter prosecution that would not rely upon failing to stop since it appeared that the juvenile violated virtually every known traffic ordinance. *Id.* at 419, 100 S.Ct. at 2266. The dissenters concluded that the "serious question" could only be answered in the affirmative and, therefore, double jeopardy would be violated. *Id.* at 422, 100 S.Ct. at 2268. Later, in *Grady*, the Court adopted the *Vitale* dissenter's view. Still later, in *Dixon*, this view was rejected and *Grady* was overruled. *Dixon*, —— U.S. at ———–——, 113 S.Ct. at 2860–62. It appears that *Dixon* disapproves of the dictum in *Vitale* and, thereby, significantly limits the holdings of *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) and *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Justice Scalia dismisses these latter two cases as representative of a rare situation, a felony for which felony murder is the best illustration. It can be

committed through various means: (1) homicide and rape, or (2) homicide and arson or (3) homicide and robbery, in which case it is possible to treat rape as a species of lesser included offense of (1) but not of (2) and (3). While quoting *Vitale*, 447 U.S. at 420–421, 100 S.Ct. at 2267, Justice Scalia explained in *Dixon* that " 'the crime generally described as felony murder 'is not' a separate offense distinct from its various elements' " *Dixon*, —— U.S. at ——, 113 S.Ct. at 2857. Thus, if a defendant was charged with but acquitted of rape, under Justice Scalia's reading of *Harris–Brown*, he could not thereafter be charged and convicted of Example (1). However, if the facts warranted, perhaps, he could thereafter be charged and convicted of Example (2) or (3) even though the homicide, the rape, the robbery, and the arson were part of the same transaction. This would follow from the fact, I assume, that in instructing the jury regarding felony murder, it would be necessary to specify the felony which with a homicide adds up to felony murder. *See, e.g.,* 2 Devitt, Blackmar and O'Malley, Federal Jury Practice and Instructions § 38B.18 (4th ed. Supp.1995). It would not appear that a civil forfeiture would satisfy Justice Scalia's reading of *Brown–Harris* because the interplay between the various charges of conspiracy and continuing criminal enterprise in this case and the contemporaneous civil forfeiture proceeding is more analogous to that between conspiracy to possess cocaine and possession of the same cocaine, the type of situation addressed in *United States v. Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), because it is certainly possible to acquire a place and maintain it for the purpose of distributing cocaine before one actually acquires any cocaine to distribute.

government must prove to prevail. In both situations, the elements are sent to the jury in the jury instructions.

■ What then is the minimum the government must prove to obtain a forfeiture? *See* 21 U.S.C. § 881(a). The government must prove that there is probable cause to believe that there is a substantial connection between the property and some violation of one or more of the laws prohibiting drug trafficking. For example, probable cause that the property was either purchased with the proceeds of drug offenses or was used to commit or facilitate the violation of various drug statutes. In each case, the elements of the claim focus on specific property. In contrast, none of the criminal statutes require the use of any specific property to prove guilt. Thus, the civil claim has an element not shared by the criminal statutes. Consequently, it is not possible to find that the civil forfeiture and the criminal prosecution are identical offenses. *See United States v. Chick*, 61 F.3d 682, 687 (9th Cir.1995) (holding that if criminal charges require proof of facts which the civil forfeiture action would not have required to be proven, then the criminal charges cannot be said to be based upon the same offense underlying the forfeiture action).

The only alternative allowed by *Dixon* would be a finding that one was a lesser offense and the other a greater offense. Clearly, the criminal offense could not be the greater because it does not completely include the elements of the civil forfeiture, the involvement of property. Therefore, some cases conclude, without analysis, that the civil forfeiture must be the greater offense and the criminal offenses must be lesser included offenses. *See, e.g., United States v. Ursery*, 59 F.3d 568, 574 (6th Cir.1995).[6] This seems wrong. The criminal cases all require the government to prove both an actus reas and mens rea, generally knowledge or intent; the civil forfeitures do not require the government to prove mens rea. True, the innocent owner defense injects additional elements into the case with superficial similarity to mens rea, but it is clear that Congress did not consider the claimant's burden to relate to elements of the offense. The claimant is given an affirmative "defense".[7]

There is a clear distinction, however, between the elements of the offense and the elements of an affirmative defense. First, the claimant must disprove knowledge and consent and the government does not have to prove it as an element. *See United States v. 1980 Red Ferrari, VIN No. 9A0034335*, 827 F.2d 477, 478 (9th Cir.1987). More important, to convict of the underlying crime, the government must prove that the defendant committed the actus reas with the complementary mens rea. The elements of the criminal case focus on the defendant and his actions. In contrast, to avoid forfeiture, the claimant must prove that he did not have knowledge that anyone was using his property in drug trafficking and that he tried, to the extent of his power, to prevent its use for such purposes; this is a significantly greater burden than the burden to prove that he was

---

**6.** It is an elementary principle of logic that if a equals b and c equals b, then a must equal c. By extension, if all of the criminal offenses which trigger a forfeiture are lesser included offenses of civil forfeiture then civil forfeiture must contain all of their respective elements. However, many of the offenses have incompatible elements and, as the Supreme Court held in *Felix*, conspiracy to commit drug offenses and the commission of the same drug offenses have disparate elements. *Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25. Thus, in a case like the instant case it is hard to see how a civil forfeiture can be held to be a greater offense including all of the drug offenses for which Falkowski was charged.

**7.** In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court held that a person may not be convicted of a criminal offense unless the government proves his guilt of "each element" of the offense beyond a reasonable doubt. The court later made it clear that despite *Winship* a legislative body could place on the defendant the burden of proving an affirmative defense. *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). For this Court's purposes, these latter cases stand for the proposition that a legislative body does not create new elements of an offense by permitting an affirmative defense. Thus, lack of knowledge and consent are not elements of the case which the government must prove to establish a forfeiture. Consequently, a civil forfeiture cannot be a greater offense to which all of the drug offenses mentioned in Title 21 are lesser included offenses.

not an accomplice[8]. Thus, the civil claim and the criminal offense each have an element not shared by the other. The civil claim requires the use of property; the criminal claim requires mens rea. The cases that conflate the civil claim and the criminal offense fail to see the significance of *Dixon's* overruling of *Grady*. The United States Supreme Court clearly repudiated both a same conduct test and a same transaction test. *See Dixon,* —— U.S. at —— n. 14, 113 S.Ct. at 2863 n. 14. More importantly, the Court made it clear that the same offense test means precisely the same thing whether courts are considering the successive prosecution strand of the double jeopardy clause, or the successive punishment strand. *See*

*Dixon,* —— U.S. at ——, 113 S.Ct. at 2860 ("it is embarrassing to assert that the Fifth Amendment single term 'same offense' has two different meanings"); *Witte v. United States,* —— U.S. ——, ——, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995) ( [*Dixon* ] emphasiz[es] that the same inquiry generally applies in both the multiple punishment and multiple prosecution contexts).

It is, of course, true that the government will typically rely on the same evidence to prove the charges in the indictment and the forfeiture claim. It is also true that the forfeiture will inevitably arise out of the same transaction or series of transactions as the criminal prosecution. But, as *Dixon* teaches, this is not enough.[9] The confusion

8. Proof of a crime generally requires proof of an illegal act, actus reas, and a complementary guilty mind, mens rea. Generally, the criminal law recognizes an ascending scale of mens rea beginning with recklessness and proceeding through knowledge to intent. Lesser offenses require a lesser mens rea and greater offenses require a greater mens rea. For example, consider the various degrees of homicide. *See* ROLLIN PERKINS, CRIMINAL LAW 826–926 (3d ed. 1982). JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 70–212 (2nd ed. 1960). GLANVILLE WILLIAMS, TEXTBOOK OF CRIMINAL LAW 29–107 (1978). GEORGE FLETCHER, RETHINKING CRIMINAL LAW 396–401 (1978). It is difficult to analogize civil forfeiture to criminal cases for the purpose of determining what mental state is required. Generally, to prevail under 21 U.S.C. § 881 the government has the burden of showing probable cause, a strong suspicion to believe that someone has used the property or obtained the property through the actus reas of one of the drug statutes. After the government satisfies this burden, the burden shifts to each claimant to exonerate herself. 19 U.S.C. § 1615. Probable cause does not require a showing of any specific claimant's mens rea. It must only be shown that the property has a substantial nexus with drug related activity. *United States v. $5,644,540 in U.S. Currency,* 799 F.2d 1357, 1362–63 (9th Cir.1986) (circumstantial evidence of drug transactions is sufficient to establish probable cause). As mentioned above, once probable cause is established, the burden shifts to the claimant to prove by a preponderance of the evidence that the actus reas did not exist. In other words, the claimant must show that the property was not substantially connected to drug trafficking or that the claimant is an "innocent owner." To prove that the claimant was an "innocent owner" there must be a showing that, if the property was used in drug trafficking, it was without the claimant's knowledge or consent. *See, e.g., United States v. One 1973 Rolls Royce, V.I.N. SRH–16266,* 43 F.3d 794 (3rd Cir.1994) and *United States v. Two Parcels of*

*Property Located at 19 and 25 Castle Street,* 31 F.3d 35 (2nd Cir.1994). Because the claimant has the burden of proving a lack of knowledge and consent, it would appear that his knowledge and consent are not elements of the government's case for *Dixon* purposes. Also, it is at least arguable that the "innocent owner" defense requires the claimant to disprove negligence. *See, e.g., Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In any event, the claimant's burden is to show that he had neither knowledge nor consent that anyone had used the property for drug related activity; it is not enough to show that he was not an accomplice by assisting in drug related activity with knowledge or intent. Thus, it is not possible to find a sufficient identity of mens rea between civil forfeiture and the various drug offenses to make the civil forfeiture a greater offense and the criminal prosecutions lesser offenses.

Part of the confusion in this area is no doubt traceable to the fact that virtually all the early cases involved situations in which the criminal conviction came first and the government used the defendant's conviction, by way of collateral estoppel, against him in the civil proceeding and then defeated the "innocent owner" defense by summary judgment. In such a case, it is easy to see a court jumping to the conclusion that the civil forfeiture was simply an additional punishment imposed on top of the criminal conviction. When the civil forfeiture comes first neither collateral estoppel nor summary judgment are available. The distinction between the necessary mens rea in that situation should be apparent to any court.

9. If Falkowski had only been charged in the indictment with participating in one drug transaction on a single day at the Caribou Way property and the government had separately sought to forfeit the property based only on that one

in the cases comes from the failure to distinguish between the allegations in the complaint or indictment, much of which may be surplusage, and the elements that must be proven. *See, e.g., United States v. McCaslin*, 863 F.Supp. 1299, 1303 (W.D.Wash.1994) and *Oakes*, 872 F.Supp. at 823–24 (suggesting that, because proof of any violation of drug laws would permit a forfeiture, any forfeiture is the same offense as any violation of the drug laws). That confusion is compounded in forfeiture cases when the court, conducting an analysis of elements to determine whether a criminal prosecution and a civil claim have the same elements, focuses on the affidavit submitted in conjunction with the showing of probable cause necessary to seize the property in the first instance instead of focusing on the elements the government must prove to forfeit the property. It is probably true that the affidavit will set out virtually everything that is known about the defendant's criminal activities, but it does not determine what must be proven to accomplish a forfeiture. A single use of the property, in conjunction with a single violation, will suffice. *See, e.g.,* 21 U.S.C. § 881(a)(7).

As the Supreme Court made clear in *Felix*, 503 U.S. at 380–81, 112 S.Ct. at 1379–80, prosecution of a defendant for conspiracy does not violate the double jeopardy clause, where some of the overt acts relied upon by the government are based on substantive offenses for which the defendant has been previously convicted and punished. Consequently, prosecution for conspiracy or its twin, continuing criminal enterprise after the defendant has previously suffered a civil forfeiture based on similar evidence and arising out of the same transaction, does not violate the double jeopardy clause. *See United States v. Saccoccia*, 18 F.3d 795, 798 (9th Cir.1994) ("A substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes.")

(citing *Felix*, 503 U.S. at 389, 112 S.Ct. at 1384). By the same token, the fact that the civil forfeitures and the criminal indictment charge violations of similar statutes is not determinative.

An example will illustrate the point. Assume that John Doe flies his Cessna 180 on the first of each month for thirty-six months between Mexico City and Los Angeles to pick up and deliver a shipment of cocaine. Clearly, each trip is a separate crime which could be separately prosecuted and separately punished. In addition, conspiracy counts would probably be sustained. The issue arises in that type of situation as to whether the government could prosecute him criminally for twenty trips and use one or more of the other sixteen as a predicate for forfeiture of the airplane. *See Felix*, 503 U.S. at 386–87, 112 S.Ct. at 1382–83 (suggesting that it could). It is not enough, however, to tie a particular forfeiture to a particular criminal statute. It is also necessary to tie it to a particular violation of that statute on a particular day and at a particular place charged in a particular indictment for the forfeiture and the prosecution to encompass the same offense. It is only then that an elements analysis can be made. *See, e.g., One 1978 Piper Cherokee Aircraft*, 37 F.3d at 494–95 (prosecution of defendant for drug offenses does not bar subsequent forfeiture tied to criminal act which did not result in specific prosecution). It is clear, for example, that jeopardy does not attach to dismissed counts. *See United States v. Vaughan*, 715 F.2d 1373 (9th Cir.1983) (where defendant pleads to some charges in an indictment and others are dismissed, jeopardy only attaches to the counts to which the defendant pleads). In this case, a number of counts were dismissed as part of the plea bargain. Thus, any of the dismissed counts could form the basis for the

transaction, the argument that both the forfeiture claim and the criminal prosecution constituted the same offense would have some persuasiveness. However, it still would not be enough to survive *Dixon*. But, this is not even the case because Falkowski was charged with using the property for an extended period of time, and participating in many transactions. Any one of

the transactions could support the forfeiture. To sweep all of his offenses into a single offense with the forfeiture claim to invoke the Double Jeopardy Clause, the court would have to incorporate a same evidence, same conduct, or same transaction test into double jeopardy. The Supreme Court, however, precluded such importation in *Witte* and *Dixon*.

civil forfeiture without impacting double jeopardy.[10]

**IT IS THEREFORE ORDERED:**

Falkowski's motion at Docket No. 1047 to vacate his conviction is **DENIED.**

---

10. It appears that the Caribou Way property was included in a separate count of the indictment which was dismissed as part of the plea agreement. Thus, jeopardy never attached to that count. Falkowski does not contend that the plea agreement specifically exempted the Caribou Way property from forfeiture. He does not contend that the government breached the plea agreement.