STATE of Wisconsin, Plaintiff-Respondent,

v.

Tracy L. HANNA, Defendant-Appellant.

Court of Appeals

*No. 90-1739-CR. Oral argument March 14, 1991.—Decided
April 10, 1991.*

(Also reported in 471 N.W.2d 238.)

On behalf of the defendant-appellant, there were briefs and oral argument by *John D. Lubarsky,* assistant state public defender.

On behalf of the plaintiff-respondent, there was a brief filed by *Donald J. Hanaway,* attorney general and *Paul Lundstent,* assistant attorney general. There was oral argument by *Paul Lundstent.*

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J. Tracy L. Hanna appeals from a judgment of conviction for first-degree sexual assault pursuant to sec. 940.225(1)(d), Stats. (1985–86).[1] She argues, in part, that the trial court erred when it ruled that the four-year-old victim was unavailable for constitutional confrontation purposes. The state does not defend the trial court's unavailability ruling on the mer-

---

[1]The legislature repealed sec. 940.225(1)(d), Stats., effective July 1, 1989, *see* secs. 30 and 66a, 1987 Wis. Act 332, and transferred the offense, in revised form, to ch. 948, Crimes Against Children. *See* sec. 55, 1987 Wis. Act 332, creating sec. 948.02(1), Stats.

its. Instead, the state contends that Hanna waived this issue. We conclude that Hanna preserved the issue. We also conclude that the witness was not unavailable for confrontation purposes. Therefore, we reverse the judgment of conviction and remand for a new trial.

## FACTS

During January 1988, Hanna occasionally babysat for S.R., the niece of her live-in boyfriend. During February, while in the care of Jackie Flunker, S.R. attempted to touch Flunker's breasts and remove her bra. Under questioning from Flunker, S.R. refused to talk about the incident and hid her face in a pillow.

Some days later, Flunker related the incident to Sallie Jensen, S.R.'s grandmother. Jensen, in turn, questioned S.R. Initially, S.R. did not respond, but eventually she made statements implicating Hanna. Occasionally during this questioning, S.R. would run off to another room and again hide her face in a pillow. Jensen testified that S.R. was "very scared and really funny" during this conversation and that such conduct was unusual for her.

The following day, Jensen and S.R.'s mother, Robin, discussed the matter with a private attorney who assisted in bringing the matter to the attention of the authorities. On March 2, 1988, Plymouth Police Officer Jeffrey Tauschek and social worker Patricia Damon interviewed S.R. The grandmother, Jensen, was also present. During this questioning, S.R. gave verbal and nonverbal responses and would again occasionally hide her face in a pillow. However, through the use of anatomically correct dolls and her own teddy bear, S.R. demonstrated acts of sexual contact between herself and Hanna. This prosecution ensued.

## PROCEDURAL HISTORY AND WAIVER

Because the state rests its case on waiver, we address the procedural history of this case in some detail.

The question of S.R.'s unavailability first arose at the preliminary hearing when the state called S.R. as a witness.[2] The state asked S.R. thirteen questions. S.R. gave one verbal response, providing her mother's first name. In addition, she held up four fingers when asked her age. In response to the remaining questions, S.R. provided eight affirmative or negative nods of her head. To the state's remaining three questions, S.R. gave no response. The state then asked the magistrate to declare S.R. unavailable. Before the magistrate ruled, Hanna's counsel asked S.R. two additional questions. S.R. did not respond to either question. Without objection from Hanna, the magistrate declared S.R. unavailable.

The state then introduced S.R.'s hearsay statements regarding the incident through S.R.'s mother and grandmother.

At the conclusion of the preliminary hearing, Hanna challenged only the reliability of S.R.'s hearsay statements. Hanna did not quarrel with the magistrate's unavailability ruling. The magistrate rejected Hanna's argument and bound Hanna over for trial.

Apparently anticipating that S.R. would prove a difficult witness at trial, the state brought a pretrial motion asking the trial court to declare S.R. an unavailable witness. At the motion hearing on December 7, 1988, the state again produced S.R. as a witness. The state put thirty-six questions to S.R. S.R. gave one verbal response, answering "No" to a request that she point out

---

[2]Judge L. Edward Stengel presided at the preliminary hearing.

Hanna in the courtroom. To twenty-six questions, S.R. gave affirmative or negative nods of her head. To the remaining nine questions, S.R. gave no response. Hanna did not ask S.R. any questions.

The trial court then dismissed S.R. as a witness, observing, "The record should indicate that while [S.R.] was on the stand there were no verbal responses, as the record shows, and [S.R.] was chewing on the little finger of her left hand."[3] The state then advised the court that the parties wished to brief the issue of S.R.'s "being available or unavailable." The court approved this procedure.

The state then introduced S.R.'s hearsay statements through the testimony of S.R.'s mother, grandmother, Officer Tauschek and social worker Damon. At the conclusion of the hearing, the trial court directed the parties to file briefs on the question of whether S.R.'s hearsay statements should be admitted at trial.

The state's brief addressed both prongs of the well-accepted "two-step approach to be used in determining whether hearsay evidence satisfies the requirements of the confrontation clause." *State v. Bauer*, 109 Wis. 2d 204, 210, 325 N.W.2d 857, 861 (1982). First, the witness must be unavailable. Second, the evidence must bear some indicia of reliability. *Id.* at 215, 325 N.W.2d at 863.

Hanna's brief also cited to this methodology. However, Hanna concentrated on the threshold inquiry to this determination—whether the evidence qualified in the first instance under an exception to the hearsay rule. *See id.* In addition, Hanna suggested that the state dismiss the complaint and refile the charge at some later

---

[3]The trial court's statement that S.R. gave no verbal responses was incorrect on one minor point—S.R. gave one verbal response.

date when S.R. was better able to testify. From this, the state argues that Hanna conceded S.R.'s unavailability.

We do not read Hanna's trial brief as abandoning the unavailability prong of a confrontation inquiry. Although concentrating on the hearsay aspects of the issue, Hanna correctly cited the methodology which requires that the court address both hearsay and unavailability. In addition, Hanna cited *Coy v. Iowa,* 487 U.S. 1012 (1988), and its strong reaffirmation of face-to-face confrontation principles.[4]

We think it significant that, at the trial level, neither the state nor the trial court appeared to share the "waiver" approach that the state now advances on appeal. As noted earlier, after the motion hearing, the state addressed *both* prongs of the confrontation issue in its trial brief. So did Hanna, albeit with more emphasis on the hearsay prong than on the confrontation prong. Most importantly, the trial court's decision substantively addressed the unavailability prong of the confrontation question. The court's decision does not even remotely suggest or imply that Hanna had conceded S.R.'s unavailability.

In addition, the record reveals that the trial court's unavailability ruling remained a prominent issue as the trial date drew near. The court rendered its initial ruling admitting S.R.'s hearsay statements on March 13, 1989, approximately six months before the case went to jury trial. On August 28, three days before the jury trial,

---

[4]At oral argument before this court, the state contended that the purpose of Hanna's reference to *Coy v. Iowa,* 487 U.S. 1012 (1988), was to explore alternatives to S.R.'s live testimony, i.e., "screening" the witness or videotaping her testimony. True, Hanna had previously suggested a videotape alternative. However, she withdrew this request prior to the motion hearing.

Hanna filed an "Objection To Admission Of Hearsay." The opening language in this "objection" states:

> Now comes the defendant, by counsel, *objecting to the courts [sic] prior ruling that the juvenile victim is unavailable to testify* and allowing the admission of hearsay statements made by the juvenile to others. [Emphasis added.]

In addition, Hanna complained at paragraph "2" of this "objection" that "[t]he defendant is being denied her State and Federal Constitutional Right to confront the witnesses against her."

The state argues that Hanna was only pursuing a new or "fresh" assessment of S.R.'s availability since the trial court's previous ruling was some six months old and was based upon S.R.'s court appearance some nine months before. True, Hanna also sought this fresh ruling in her moving papers. But the language of Hanna's "objection" clearly stated that she was *objecting* to the court's *earlier unavailability* ruling. In our judgment, Hanna's quest for a fresh ruling on the unavailability question was consistent with—not antagonistic to—her objection to the earlier ruling.

Hanna also filed a pretrial "Position Statement Regarding Hearsay And Confrontation By The Defense." In this document, Hanna based her objection upon "hearsay grounds, due process grounds, State Constitutional grounds *allowing 'face to face' contact* and United States Constitution grounds concerning confrontation." (Emphasis added.) Hanna argued:

> The State bears the burden of proving *unavailability* both as to any hearsay exception and as to any analysis of the right to confront witnesses. [Emphasis added.]

200

While Hanna also opined as to other options available to the state (e.g., adjournment or videotaping), these did not undo the efficacy of her objection to the court's unavailability ruling. In short, Hanna's "objections" continued to press the trial court on the question of S.R.'s past and present unavailability.[5]

The trial court's rulings and remarks at the proceedings during the days immediately preceding the jury trial also confirm that unavailability remained a paramount issue. For instance, the court acknowledged that Hanna's pretrial motions requested the court to reconsider its prior unavailability ruling. The court then addressed this request on the merits in a detailed bench decision. The court's remarks do not intimate or suggest that unavailability was not at issue or that Hanna had previously conceded S.R.'s unavailability. Instead, the court again addressed both prongs—hearsay and unavailability—of the confrontation issue.

In light of Hanna's renewed objections, the court expressly adopted its earlier opinion, concluding: "[T]he Court's ruling that she [S.R.] is an unavailable witness and that the hearsay has sufficient indicia of reliability to come in under the Residual Exception to the Hearsay Rule still stands."

Our supreme court has recently spoken to the justifications for the waiver rule. *Vollmer v. Luety,* 156 Wis. 2d 1, 456 N.W.2d 797 (1990). "First, it is the role of an appellate court to correct errors made by the trial court, not to rule on matters never considered by the trial court." *Id.* at 10-11, 456 N.W.2d at 802. Here, we have two detailed trial court decisions—one written, one from

---

[5]These "objections" filed by Hanna are not expressly recognized by the rules of criminal procedure. We construe them as the equivalent of a trial brief on the unavailability issue. It appears the trial court did likewise.

the bench—which substantively addressed the unavailability prong of Hanna's confrontation challenge.

"Second, requiring objections at trial allows the trial judge an opportunity to correct or to avoid errors, thereby resulting in efficient judicial administration . . .." *Id.* at 11, 456 N.W.2d at 802. Here, the trial court construed Hanna's original objection as requiring the court to address both prongs of the confrontation issue. Following the court's written ruling, Hanna clearly conveyed to the trial court her *objection* to the ruling. It is equally clear that the court understood Hanna's objection as traveling to the unavailability issue since the court spoke directly to this issue in its bench decision reaffirming its earlier written decision. Thus, Hanna's objection gave the court an opportunity to correct any potential error.

"Third, if attorneys are not required to raise issues at the trial court level, there is less of an incentive for attorneys to diligently prepare their cases for trial." *Id.* An attorney must state an objection with that degree of prominence which alerts the trial court that a ruling is sought. *See State v. Salter,* 118 Wis. 2d 67, 79, 346 N.W.2d 318, 324 (Ct. App. 1984). If the record, assessed as a whole, reveals that both the trial court and opposing counsel understood the nature of the objection, we are unlikely to find waiver. *See Hagenkord v. State,* 100 Wis. 2d 452, 468-69, 302 N.W.2d 421, 430 (1981). Based upon this case's procedural history, we conclude that Hanna raised the unavailability issue in manners sufficient to alert the trial court that Hanna sought both an initial unavailability ruling and a reconsidered unavailability ruling.

"Finally, this court will not consider an issue for the first time on appeal because it may result in hardship to

202

one of the parties and deprives the appellate court of the benefit of informed thinking of the trial judge." *Vollmer,* 156 Wis. 2d at 11, 456 N.W.2d at 802. At the trial level, the state never asserted that Hanna had conceded or stipulated to S.R.'s unavailability. Instead, the state met the issue on the merits. Therefore, we visit no appellate hardship upon the state by addressing the issue on its merits. Also, as noted earlier, the trial court twice addressed the unavailability issue. Therefore, we do not address this issue in a vacuum. Instead, we have the benefit of the trial court's informed thinking on the matter.

In attempting to narrow the focus of Hanna's trial court arguments and objections, the state selectively reads the trial court record on this question. As noted, however, our obligation is to assess the record as a whole. *See Hagenkord,* 100 Wis. 2d at 468, 302 N.W.2d at 430. After this assessment, we conclude that the justifications for invoking waiver are not present in this case. Therefore, we address the trial court's rulings on their merits.

## CONFRONTATION

As noted earlier, when the state seeks to admit hearsay testimony over a confrontation challenge, the trial court first determines whether the evidence survives under the hearsay statutes and, if so, whether the evidence survives under the confrontation clause. *Bauer,* 109 Wis. 2d at 215, 325 N.W.2d at 863. The latter prong contemplates two determinations: (1) is the witness unavailable; and (2) does the evidence bear some indicia of reliability. *Id.*

## Hearsay

Hanna does not challenge the trial court's hearsay ruling. We thus move to the unavailability prong of the confrontation issue.

## Unavailability

As noted earlier, the state does not defend the trial court's unavailability ruling on the merits.[6]

We conclude that *State v. Dwyer,* 143 Wis. 2d 448, 422 N.W.2d 121 (Ct. App. 1988), governs the issue of S.R.'s unavailability in this case. The facts in *Dwyer* are somewhat similar to those here. There, the trial court admitted the out-of-court statements of a three-and-one-half-year-old sexual assault victim. The court concluded that the child was incompetent to testify because "she did not know the difference between telling the truth and telling lies." *Id.* at 455, 422 N.W.2d at 123. Therefore, the court concluded that the child was unavailable.

The court of appeals reversed the trial court's unavailability ruling:

> Wisconsin judges are no longer empowered to review a witness's competency . . ..
>
> Our supreme court has specifically found that the former questions of competency are now credibility issues to be dealt with by the trier of fact. *State v. Davis,* 66 Wis. 2d 636, 647, 225 N.W.2d 505, 510 (1975); *State v. Olson,* 113 Wis. 2d 249, 253, 335 N.W.2d 433, 436 (Ct. App. 1983). Because judges in Wisconsin are not empowered to review a witness's competency, the trial court erred by concluding that A.F.'s inability to distinguish between the truth and a lie rendered her incompetent to testify as a witness.

---

[6]Nor, however, does the state expressly confess error.

*Id.* at 461–62, 422 N.W.2d at 125–26 (footnote omitted).[7]

*Dwyer,* citing *Ohio v. Roberts,* 448 U.S. 56 (1980), rests its holding squarely on face-to-face confrontation principles:

> Under both the state and federal constitutions, a defendant is generally guaranteed the right to confront any witness. The confrontation clause envisioned:
>
>> [A] personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Dwyer,* 143 Wis. 2d at 463, 422 N.W.2d at 126 (citations and emphasis omitted) (quoting *Roberts,* 448 U.S. at 63–64).

Competency has two aspects. One is the moral responsibility to speak the truth, which is the essence of

---

[7]In *State v. Dwyer,* 143 Wis. 2d 448, 422 N.W.2d 121 (Ct. App. 1988), the court also concluded that the witness was not unavailable as defined by sec. 908.04, Stats. Unavailability is established under this statute where the witness: (1) is exempted from testifying on privilege grounds; (2) persists in refusing to testify in the face of an order of the judge to do so; (3) testifies to a lack of memory; (4) is unable to be present or to testify because of death, or existing physical or mental illness or infirmity; or (5) is absent and the proponent of the evidence is unable to procure the witness by process or other reasonable means. *Id.* at 462–63, 422 N.W.2d at 126. As in *Dwyer,* S.R. also was not shown to be unavailable within the meaning of this statute.

the nature and obligation of an oath. *State v. Schweider,* 5 Wis. 2d 627, 630, 94 N.W.2d 154, 157 (1959). This aspect of competency was at issue in *Dwyer.* The second aspect of competency is the mental capacity to understand the nature of the questions and to form and communicate intelligent answers thereto. *Id.* This aspect of competency is presented here. The law of this state holds that every person is competent to be a witness. Section 906.01, Stats.;[8] *Dwyer,* 143 Wis. 2d at 461, 422 N.W.2d at 125. We also now know under *Dwyer* that Wisconsin judges are no longer empowered to review a witness's competency. *Id.* Thus, whether the consideration be a witness's willingness or ability to speak the truth, or a witness's willingness or ability to communicate intelligent answers, both considerations travel to competency.[9] These considerations go to the witness's credibility. *Id.* at 462, 422 N.W.2d at 126. We also conclude that such matters go to the weight of a witness's testimony.

## CONCLUSION

■ Because the trial court erroneously ruled that S.R. was unavailable, we reverse the judgment of conviction and remand for a new trial.[10]

---

[8]Section 906.01, Stats., recites that the only exceptions to competency are transactions with a deceased or insane person "or as otherwise provided in these rules."

[9]In this regard we note that, despite S.R.'s failure to significantly verbalize at both the preliminary hearing and the motion hearing, her affirmative and negative nods of her head (as documented by the magistrate and the trial court) appeared responsive since those questions called for "yes" or "no" answers.

[10]Since we reverse the trial court's unavailability ruling, we need not address Hanna's further claims that the court's reliability ruling was erroneous and that the court also failed to make a

*By the Court.*—Judgment reversed and cause remanded.

"fresh" unavailability ruling based upon S.R.'s status as of the trial date. Upon remand, the parties are, of course, free to explore with the trial court other possible alternatives to the live testimony of S.R. *See, e.g.,* sec. 908.08, Stats.