STATE of Wisconsin, Plaintiff-Respondent,

v.

KEVIN L. C., Defendant-Appellant.†

Court of Appeals

*No. 97–1087–CR. Submitted on briefs October 2, 1997.—Decided December 4, 1997.*

(Also reported in 576 N.W.2d 62.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John D. Lubarsky,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Robert R. Henak* of *Shellow, Shellow & Glynn*, *S.C.* of Milwaukee, for American Civil Liberties Union of Wisconsin Foundation, Inc.

Before Eich, C.J., Roggensack and Deininger, JJ.

DEININGER, J. Kevin C. appeals a judgment convicting him of one count of first-degree sexual

assault of a child in violation of § 948.02(1), STATS., and three counts of exposing a child to harmful materials contrary to § 948.11(2)(a), STATS. Kevin also appeals the denial of his motion for postconviction relief. Kevin claims the trial court violated his constitutional right of confrontation by declaring the child victim of the sexual assault, A.R., "unavailable" to testify at trial, and thereafter admitting statements A.R. had made to a social worker under the "residual" hearsay exception, § 908.045(6), STATS. Kevin also argues that § 948.11, which criminalizes the act of exposing a child to harmful materials, is unconstitutional because the statute does not require the State to prove the defendant knows the recipient of the materials is a minor. We reject both of Kevin's claims and affirm the judgment of conviction and the order denying postconviction relief.

## BACKGROUND

Barbara R. and Michelle C. are sisters. In October 1994, Barbara and her four children went to live with Michelle, her husband Kevin and their three children. Sometime between October 30 and December 1, 1994, while living with Kevin and Michelle, Barbara left her children, including her five-year-old daughter A.R., with Kevin while she and Michelle left to do some errands. When the two returned from the errands they found Kevin and the children asleep in various rooms of the mobile home and nothing seemed out of the ordinary. On December 5, 1994, Barbara and her children moved out of the home after an argument between Kevin and Barbara.

After moving out, Barbara returned to the home twice during December 1994 and January 1995. The second time Barbara did so, A.R. was with her. During this visit, A.R. called Kevin a "pussy licker." A.R. had

used profanity before but her mother reported that she had never heard A.R. use the term "pussy licker" prior to that occasion. At Barbara's house later that evening, A.R. drew a picture of a penis. When questioned by her mother about the drawing, A.R. stated that Kevin pulled down her pants and licked her privates. Barbara contacted her family therapist who then contacted Grant County Social Services.

About two weeks later, a Grant County social worker, along with a sheriff's deputy, came to Barbara's home. The social worker interviewed A.R. in Barbara's home while Barbara remained in a separate room. During this interview, A.R. told the social worker that she saw Kevin's "peedoe" when her mom was at the store getting pizzas. A.R. reported that Kevin touched her "boobies" and her "peepee" in the bathroom at Kevin's house. A.R. stated that Kevin took off all his and A.R.'s clothes and then stuck "his peter into [A.R.'s] pussy." A.R. also stated that, while Kevin was having sex with her, B.R. (A.R.'s brother) and J.C. (Kevin's son) were getting knives. According to A.R., "[t]hey [B.R. and J.C.] were gonna stab Kevin and beat him up and cut his peter off. . . . [bec]ause he's [Kevin] a fucking prick."

The social worker asked A.R. if she was ever with Kevin in his room. A.R. stated that Kevin "[g]rabbed my, got my hair, and got my hair, and he goes and gets a naughty movie out and I took off." A.R. claimed that she, along with B.R. and J.C., saw this movie. A.R. also stated that Kevin showed her a naughty magazine. When Kevin heard Barbara and Michelle return home he apparently took the naughty movie out and put in a "Barney" videotape.

At trial, A.R.'s interview with the social worker was read to the jury after the trial court had declared

170

A.R. unavailable to testify at trial. The social worker repeated the questions she asked A.R., and A.R.'s answers were read by a sheriff's deputy. Additionally, a transcript of that interview was offered and received into evidence. Kevin objected to the reading and introduction of the transcript and moved for a mistrial following its presentation to the jury.

A.R.'s brother, B.R., who was eight years old, testified at trial. He reported that on one occasion his mother, Barbara, left him and his three sisters with Kevin. B.R. claimed that Kevin put a naughty movie in the VCR after his mother and Michelle left. B.R. testified that he watched this movie in which people were "humping" and doing other sexual acts. B.R. stopped looking at the movie when Kevin grabbed A.R. and went into the bedroom. B.R. said that he and J.C. looked underneath the bedroom door and saw Kevin and A.R. with no clothes on "[h]umping" on the bed. During this time, A.R. and J.C. had knives and were using them to "stab[ ] holes in the door" so that they could see what was happening in the bedroom. B.R. stated that, when Kevin went into the bathroom to get a dirty magazine, B.R. and J.C. tried to trap him there but Kevin was able to take the knives and return to the bedroom. B.R. then went back to looking under the door of the bedroom where he then saw "Kevin . . . pushing [A.R.'s] head down to his D-I-C-K." Kevin then apparently heard his wife and Barbara return home, got dressed, and took out the dirty movie and replaced it with a "Barney" video.

J.C., Kevin's five-year-old son, testified at trial that Kevin never showed him a dirty movie. He also testified that he never saw his dad do anything to any of the children; that he never heard anyone talk about "humping"; and that he and B.R. never looked under-

neath the bedroom door. Kevin also testified at trial. He described numerous arguments between himself, Michelle and Barbara and denied that he sexually assaulted A.R. Kevin did admit to owning a pornographic videotape which he kept in his bedroom.

The jury found Kevin guilty on all counts. Kevin sought postconviction relief, alleging that the trial court violated his constitutional right to confrontation when it determined A.R. was unavailable and allowed her out-of-court statements to the social worker into evidence. In addition, Kevin claimed that § 948.11, STATS., Exposing a Child to Harmful Materials, is unconstitutional on its face because the statute does not require the State to prove, as an element of the offense, that the defendant knows the victim is a minor. The trial court denied Kevin's motion for postconviction relief, concluding again that A.R. was unavailable at trial pursuant to § 908.04(1)(b), STATS., and that her statements to the social worker were properly admitted "as a hearsay exception under the catchall clause." Section 908.045(6), STATS. The court also denied Kevin's motion to declare § 948.11 unconstitutional. Kevin appeals his conviction and the order denying his postconviction motion.

## ANALYSIS

### a. Standards of Review

■■■■■■

A decision to admit or exclude evidence is a matter within the discretion of the trial court. *State v. Sorenson*, 143 Wis. 2d 226, 240, 421 N.W.2d 77, 82 (1988). Whether the admission of a particular item of evidence violates a defendant's constitutional right of confrontation, however, is a question of law which we review de

novo. *See State v. Riddle,* 192 Wis. 2d 470, 475, 531 N.W.2d 408, 410 (Ct. App. 1995) (we review the application of a constitutional standard to undisputed facts without deference to the trial court). Likewise, whether a statute is unconstitutional on its face is a question of law which we decide independently of the trial court. *Szarzynski v. YMCA,* 184 Wis. 2d 875, 883–84, 517 N.W.2d 135, 138 (1994).

### b. Confrontation Clause

A.R.'s out-of-court statement to the social worker, in which she described the charged incident, is hearsay. *See* § 908.01(3), STATS. The trial court admitted the statement under Wisconsin's residual hearsay exception, § 908.045(6), STATS., after concluding that A.R. was unavailable to testify regarding the incident. Section 908.045(6) provides, in relevant part:

> **908.045 Hearsay exceptions; declarant unavailable.**
>
> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (6) OTHER EXCEPTIONS. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

Kevin does not challenge the trial court's conclusion that A.R.'s interview fell within the residual exception to the hearsay rule under § 908.045(6).

Some evidence that is admissible under a hearsay exception, however, is nonetheless barred by the Con-

frontation Clause[1] when offered by the State in a criminal prosecution. *Idaho v. Wright*, 497 U.S. 805, 814 (1990). Once a witness has been shown to be unavailable, his or her out-of-court statement may be admitted " 'only if it bears adequate indicia of reliability.' " *Id.* at 814–15 (quoted source and internal quotation marks omitted). The State conceded in its brief that, in order to satisfy the Confrontation Clause in this case, it was required to (1) either produce A.R., or demonstrate her unavailability, and (2) establish that her out-of-court statement bore sufficient indicia of reliability.[2] Kevin claims the State failed to meet either requirement. We therefore address both A.R.'s unavailability to testify and the indicia of reliability surrounding her out of court statement.

## *(1) Unavailability*

A.R. appeared as a witness at trial, but the State asked the trial court to find her unavailable under either § 908.04(1)(b) or (c), STATS.,[3] because when she

[1] The Sixth Amendment to the U.S. Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Similarly, Article I, section 7 of the Wisconsin Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face."

[2] In light of the State's concession, we do not address whether a showing of A.R.'s unavailability was constitutionally required on the present facts. *See State v. Sorenson*, 152 Wis. 2d 471, 491–96, 449 N.W.2d 280, 288–90 (Ct. App. 1989); *but also see Ring v. Erickson*, 983 F.2d 818, 819–20 (8th Cir. 1993) (citing *White v. Illinois*, 502 U.S. 346 (1992)).

[3] Section 908.04(1), STATS., provides that a declarant is unavailable as a witness if, among other things, the declarant

174

was asked to testify, A.R. professed a lack of recollection about the incident or did not respond at all. The court, over Kevin's objection, determined that A.R., who was then six years old, was unavailable as a witness. The trial court described the child's responses to crucial questions as follows:

> [T]he Court is going to declare that [A.R.] is unavailable because she was unable to answer questions that were central to this alleged offense. She did answer peripheral questions, but when she would come to the alleged events that constituted the crimes when she was allegedly in the care of the defendant for that hour plus time, she would merely put her hands on her eyes, hold her head down, and would not say yes or no, and she did not say she had a memory or not, she just plain would not answer. So given her age, I think she's unavailable.
>
> . . . .
>
> Given the age of the child, I don't think you can say that she chose not to answer them. I think she appeared to the Court, from the Court's observations, to be unable to answer them.

We conclude that the present facts closely parallel those we reviewed in *State v. Drusch,* 139 Wis. 2d 312, 407 N.W.2d 328 (Ct. App. 1987). In *Drusch,* as here, the State produced a very young sexual assault victim at trial who was then unable to testify regarding the offense. The eight-year-old victim in *Drusch* began to cry and was unable to respond to questions when she was called to the witness stand at trial. *Id.* at 315, 407 N.W.2d at 330. The witness was reportedly unable to

---

"[p]ersists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the judge to do so" § 908.04(1)(b), or "[t]estifies to a lack of memory of the subject matter of the declarant's statement," § 908.04(1)(c).

testify due to her fear of defense counsel and other people in the courtroom, and the trial court declared the witness unavailable because of her emotional condition. *Id.* at 316, 407 N.W.2d at 330. We concluded that "the state's efforts to offer [the child's] in-person testimony were reasonable" and that "the 'unavailability' requirement of the confrontation clause was met." *Id.* at 322, 407 N.W.2d at 333. In *Drusch,* we distinguished cases such as *State v. Gollon,* 115 Wis. 2d 592, 340 N.W.2d 912 (Ct. App. 1983), where the State "made no effort to produce the child witness" but based its argument of unavailability solely upon the mother's opinion that the child was too frightened to testify. *Drusch,* 139 Wis. 2d at 321, 407 N.W.2d at 332.

Here, the facts are even more compelling than those in *Drusch* to support the conclusion that the State fulfilled its obligation under the Confrontation Clause to make a good faith effort to produce witnesses at trial. Kevin's counsel was given the opportunity to fully cross-examine the child in front of the jury. Counsel was able to explore with A.R. her willingness to please her mother; the fact that A.R.'s mother had asked her to testify; and that A.R. had talked with the prosecutor, a social worker, a deputy, and her mother, presumably about her accusations against Kevin. The court then gave A.R. a "break" during her cross-examination. The State proceeded with another witness, after which the court asked Kevin's counsel if he wished to further cross-examine the child, and counsel replied "No, we don't have any more, your Honor." It may well be that defense counsel concluded that further cross-examination of the six-year-old would be no more fruitful than had been the State's effort to elicit testimony from A.R. regarding the charged incident.

The Confrontation Clause, however, guarantees only the *opportunity* for effective cross-examination, "not cross-examination that is effective to whatever extent the defense may wish." *State v. Lomprey*, 173 Wis. 2d 209, 216, 496 N.W.2d 172, 175 (Ct. App. 1992).

Kevin argues that *State v. Dwyer*, 149 Wis. 2d 850, 440 N.W.2d 344 (1989) and *State v. Hanna*, 163 Wis. 2d 193, 471 N.W.2d 238 (Ct. App. 1991), dictate a different outcome on the issue of A.R.'s availability. The cases are easily distinguishable from the present facts: in neither did the child victim testify, nor was she cross-examined, in front of the jury. In *Dwyer*, the four-year-old child responded during a voir dire to questions from both attorneys and the judge. She stated she was unable to remember the incident in question, only that she "hurt." *Dwyer*, 149 Wis. 2d at 852–53, 440 N.W.2d at 345. The trial court admitted the out-of-court statements after concluding the victim was incompetent to testify at trial because "[s]he does not know what the difference is between the truth and lying," and because the child "does not appear capable to be able to provide any meaningful relevant testimony by which a jury may reach a finding of fact." *Id.* at 853, 440 N.W.2d at 345–46. The supreme court concluded that under § 906.01, STATS., Wisconsin judges are not empowered to decide a witness's competency and that the trial court therefore erred in determining the child was unavailable to testify. *Id.* at 855–56, 440 N.W.2d at 346–47.

This court reviewed similar circumstances in *State v. Hanna*, 163 Wis. 2d 193, 471 N.W.2d 238 (Ct. App. 1991). As in *Dwyer*, the victim in *Hanna* was not called to testify in front of the jury. *Id.* at 197, 471 N.W.2d at 240. Of thirty-six questions asked at a pretrial motion hearing, the child answered only one with a verbal

response. *Id.* at 197–98, 471 N.W.2d at 240. The trial judge noted the lack of verbal responses but made no further findings regarding the reasons for or effect of the child's silence. *Id.* at 198, 471 N.W.2d at 240–41. We concluded, following *Dwyer*, that the child was available as a witness because every person is competent to be a witness. *Id.* at 206, 471 N.W.2d at 244.

Here, the trial court did not declare A.R. incompetent to testify. To the contrary, she did testify to the extent that she was able to do so. By placing A.R. on the witness stand in front of the jury and subjecting her to cross-examination, the State made a reasonable effort to make A.R. available at trial. *Ohio v. Roberts,* 448 U.S. 56, 74 (1980). The trial court, after observing A.R. in the courtroom during her testimony, determined that A.R. was unable to answer questions "central to the alleged offense," and that she was thus "unavailable" to give testimony regarding the subject matter of her statement to the social worker. We conclude that the State's efforts to offer A.R.'s in-person testimony regarding the charged incident were reasonable, and that the unavailability requirement of the confrontation clause was met. *See Drusch,* 139 Wis. 2d at 322, 407 N.W.2d at 333. We also agree with the State that we might just as easily conclude that the State had, in fact, "produced" A.R. for purposes of the Confrontation Clause.[4]

---

[4] Even if we were to conclude that the State produced A.R. as a witness, an inquiry into the reliability of her statement to the social worker would be necessary. If A.R. was "available," the statement would have been admissible under § 908.03(24), STATS., instead of § 908.045(6), STATS., but the evidentiary analysis is identical since both residual exceptions call for "circumstantial guarantees of trustworthiness" comparable to

## (2) Indicia of Reliability

██The trial court admitted A.R.'s out-of-court statement to the social worker, and the transcript of that statement, under the residual exception to the rule against hearsay, § 908.045(6), STATS. Statements admitted under the residual exception to the hearsay rule " 'do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception' for purposes of the confrontation clause." *Lomprey,* 173 Wis. 2d at 218, 496 N.W.2d at 176 (quoting *Wright,* 497 U.S. at 817). Thus, the prosecution must establish that:

> [T]he offered testimony carries indicia of reliability in order to satisfy the confrontation clause. The requirement is intended "to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence." The test is whether the trier of fact has a "satisfactory basis for evaluating the truth of the prior statement."

*Drusch,* 139 Wis. 2d at 322–23, 407 N.W.2d at 333 (citations omitted) (quoted sources omitted).

There is no litmus test for assessing the trustworthiness of an out-of-court interview with a child sexual assault victim. *Wright,* 497 U.S. at 819, 822. Therefore, a trial court has considerable leeway in considering

specific statutory hearsay exceptions. *See State v. Sorenson,* 143 Wis. 2d 226, 242, 421 N.W.2d 77, 83 (1988). We conclude that the reliability inquiry required by the Confrontation Clause is likewise unaffected by whether the statement was admitted under § 908.03(24) or § 908.045(6), since neither is a "firmly rooted" hearsay exception. *See State v. Lomprey,* 173 Wis. 2d 209, 218, 496 N.W.2d 172, 176 (Ct. App. 1992).

factors appropriate to the determination of whether a statement is sufficiently trustworthy. *Id.* at 822. With one exception,[5] the same types of factors considered by courts in assessing trustworthiness for admissibility under the hearsay rule are applicable in determining trustworthiness under the Confrontation Clause. *Id.* at 821–22. The goal is to determine "whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* at 822. These "particularized guarantees of trustworthiness" must be derived from the "totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 820. Thus, if A.R.'s truthfulness is so evident from the circumstances surrounding her statement that cross-examination would have been of "marginal utility," then the statement is not barred by the Confrontation Clause. *Id.*

The trial court based its finding that A.R.'s statement contained sufficient guarantees of trustworthiness on its review of the factors set forth in *State v. Sorenson,* 143 Wis. 2d 226, 245–46, 421 N.W.2d 77, 84–85 (1988). These factors include: the attributes of the child; the person to whom the statement was made; the content of the statement; and the circumstances under which it was made. *Id.* Even though the

[5] Other evidence introduced at trial tending to corroborate the hearsay statement, a proper factor in analyzing the trustworthiness of hearsay, may *not* be relied upon when the issue is a statement's reliability for Confrontation Clause purposes. *Idaho v. Wright*, 497 U.S. 805, 822–23 (1990). "To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 822.

*Sorenson* court was considering "circumstantial guarantees of reliability" as an evidentiary as opposed to a constitutional matter, many of the same factors are relevant to both inquiries. *Wright,* 497 U.S. at 821–22 (citing, *e.g., Sorenson,* 143 Wis. 2d at 246, 421 N.W.2d at 85). This court has listed factors relevant to the constitutional inquiry as including "spontaneity, consistent repetition, use of terminology unexpected of a child of similar age, [and] a lack of a motive to fabricate." *Lomprey,* 173 Wis. 2d at 218, 496 N.W.2d at 176. Because no one of these factors is determinative by itself, the trustworthiness of the statement is to be assessed in light of the totality of the relevant circumstances which make the declarant worthy of belief. *Wright,* 497 U.S. at 820–21; *Sorenson,* 143 Wis. 2d at 246, 421 N.W.2d at 85.

A.R. was five years old at the time she made the statement to the social worker. A.R. was thus of such an age that she was "unlikely to fabricate a graphic account of sexual activity because it is beyond the realm of . . . her experience." *Sorenson,* 143 Wis. 2d at 249, 421 N.W.2d at 86. Additionally, two women familiar with A.R. testified at trial that A.R. was very distrustful and fearful of speaking to strangers. Thus, the fact that A.R. revealed specifics about the incident with Kevin to a social worker she did not know supports the conclusion that A.R. was being truthful in her description of events.

The social worker who took A.R.'s statement had specialized training in interviewing young children. She had never seen A.R. before and had no ascertainable reason to influence A.R. into falsely saying she had been abused by Kevin. A.R.'s mother was not present in the room during the interview. The reliability of the statement is thus enhanced by the fact that it was

181

given to an experienced social worker with no apparent motive to coerce the child or distort the statement. *See id.* at 247–48, 421 N.W.2d at 85–86. The circumstances here are different than those in *Wright,* where a two-year-old victim made an unrecorded statement to a doctor who, prior to questioning her about the incident, had completed a physical examination of the child during which he found evidence of sexual abuse. *Wright,* 497 U.S. at 809–10. The Supreme Court, while declining to establish fixed procedural requirements for interviewing child sexual assault victims, determined that the doctor had asked the child questions which were quite suggestive and geared toward eliciting desired responses. *Id.* at 826. Here, the interview was recorded verbatim and there can be no dispute with regard to what questions were asked of A.R. or what she said in response.

The transcript of A.R.'s statement shows she was able to understand the questions asked and the answers given. The statement is quite lengthy and describes, in more detail than in her prior statement to her mother, the incident during which Kevin subjected A.R. to multiple sexual acts. When a child relates such a detailed account it indicates that she actually experienced the activity she describes. *See State v. Jagielski,* 161 Wis. 2d 67, 75, 467 N.W.2d 196, 199 (Ct. App. 1991). Kevin argues that A.R.'s regular use of profanity throughout her interview suggests alternate sources for her sexual knowledge. A.R.'s mother, however, while admitting A.R.'s past use of some profanity, stated that A.R. had never been taught anything about sex. *See Lomprey,* 173 Wis. 2d at 220, 496 N.W.2d at 177.

Kevin claims that A.R.'s statement to the social worker lacks reliability because it was not spontaneous

and because it was made at least two months after the alleged assault. However, the statement to the social worker was essentially a more detailed version of an earlier statement made by A.R. to her mother. While A.R.'s statement to her mother was also made over a month after the incident, that statement, when considered along with the drawing of male genitalia that same day, has the requisite spontaneity that the subsequent statement to the social worker may lack. The spontaneity and repetition of an accusation, along with the use of unusual terminology, are proper factors in determining the reliability of a statement. *Id.* at 219–20, 496 N.W.2d at 176–77. Although the time interval between the assault and A.R.'s disclosures is somewhat lengthy, we note that the residual hearsay exception in child sexual assault cases, unlike the excited utterance exception, is less reliant upon the timing of statements because other indicia of reliability exist to support the truthfulness of the statement. *Sorenson*, 143 Wis. 2d at 244–45, 421 N.W.2d at 84.

Kevin also points to the numerous arguments between him and Barbara, and the resulting animosity between them, as a possible motive for A.R. to fabricate a story in order to get back at Kevin on her mother's behalf. We are not persuaded by this argument, however, because a five-year-old "is unlikely to review an incident of sexual assault and calculate the effect of a statement about it" in order to gain revenge against an individual. *Id.* at 246, 421 N.W.2d at 85.

In sum, we conclude that the totality of the circumstances surrounding the statement A.R. made to the social worker provides sufficient "particularized guarantees of trustworthiness" for us to conclude that A.R. "was particularly likely to be telling the truth when the

statement was made." *Wright*, 497 U.S. at 822. Kevin's right of confrontation was not therefore violated by admission of the statement into evidence. *See Lomprey*, 173 Wis. 2d at 219–20, 496 N.W.2d at 176–77.

 *c. Constitutionality of § 948.11, STATS.*

██

 " 'The first step in reviewing a constitutional challenge to a statute is to determine which party bears the burden of proving its constitutionality. . . .' " *State v. Thiel*, 183 Wis. 2d 505, 522, 515 N.W.2d 847, 854 (1994) (quoted source omitted). The burden of demonstrating that a statute is unconstitutional beyond a reasonable doubt generally lies with the challenger, except in cases where, as here, the burden shifts to the State to establish that the statute does not infringe upon First Amendment rights. *Id.* at 522–23, 515 N.W.2d at 854. Because § 948.11, STATS., reasonably imposes upon an individual the obligation to ascertain the age of persons to whom he or she wishes to exhibit materials deemed harmful to children, we conclude that the State has met its burden of showing that the statute does not violate the First Amendment.

 Kevin was convicted of exhibiting harmful material to a child in violation of § 948.11(2)(a), STATS., which provides: "Whoever, with knowledge of the nature of the material, sells, rents, exhibits, transfers or loans to a child any material which is harmful to children, with or without monetary consideration, is guilty of a Class E felony." The statute has a twofold purpose: "(1) to protect minors from material harmful to them as a class and (2) to protect the rights of parents to supervise the development of their children." *Thiel*, 183 Wis. 2d at 524, 515 N.W.2d at 854. Under § 948.11, two elements separate unlawful conduct from

that which is permissible: (1) the nature of the material; and (2) the age of the person who is exposed to the material. *Id.* at 534–35, 515 N.W.2d at 858–59.

A law which prohibits a person from exhibiting to children materials determined to be obscene to children, though not obscene to adults, is called a "variable obscenity statute." *Id.* at 523, 515 N.W.2d at 854. A state may constitutionally enact such a statute. *Ginsberg v. New York,* 390 U.S. 629 (1968). The Wisconsin Supreme Court has held that § 948.11, STATS., is not unconstitutionally overbroad. *Thiel,* 183 Wis. 2d at 510, 515 N.W.2d at 849. In *Thiel,* the court concluded that the legislature had properly adopted the test in *Miller v. California,* 413 U.S. 15 (1973), to determine what materials are harmful to minors without unduly burdening the First Amendment rights of adults to view, sell or examine materials society does not consider obscene for them. *Thiel,* 183 Wis. 2d at 510, 515 N.W.2d at 849. In so doing, the court noted that "[e]ach of the terms in sec. 948.11(2)(a) and (b), Stats.,—'sell,' 'loan,' 'exhibit,' and 'transfer'— represents a knowing and affirmative act" of "an individual toward a specific minor or minors." *Id.* at 535, 515 N.W.2d at 859.

Kevin asserts, correctly, that § 948.11, STATS., does not require the State to prove beyond a reasonable doubt that a defendant knew that the person to whom harmful materials are exhibited or transferred is a child. A defendant charged with violating § 948.11 has the burden of proving, as an affirmative defense, that he or she "had reasonable cause to believe that the child had attained the age of 18 years." Section 948.11(2)(c).[6] (The statute, however, is not totally

---

[6] Section 948.11(2)(c), STATS., provides as follows:

 (c) It is an affirmative defense to a prosecution for a violation of this section if the defendant had reasonable cause to believe that

devoid of a scienter requirement in that it requires the State to prove beyond a reasonable doubt that the defendant was aware of the nature of the material provided to the child. *See Thiel,* 183 Wis. 2d at 535, 515 N.W.2d at 859.)

Kevin and amicus curiae argue that the U.S. Supreme Court's holding in *United States v. X-Citement Video, Inc.,* 513 U.S. 64 (1994), requires that we declare § 948.11, STATS., unconstitutional for lack of a scienter requirement regarding age. We disagree. *X-Citement Video* did not involve a statute prohibiting the act of exposing a child to harmful material, but one which prohibited knowingly transporting, shipping, receiving, distributing or reproducing a visual depiction of minors engaging in sexually explicit conduct. *Id.* at 68. The Court concluded that the statute in question would present serious constitutional questions if it did not require the government to prove a shipper's knowledge of the age of performers depicted in the materials. *Id.* at 78. The Court therefore interpreted the statute such that the term "knowingly" extended "both to the sexually explicit nature of the material and to the age of the performers." *Id.*

The *X-Citement Video* Court recognized, however, that there is an exception to the general rule that criminal statutes are presumed to include an element of scienter. *Id.* at 72–73; *see also State v. Zarnke,* 215 Wis. 2d 71, 76–77, 572 N.W.2d 491, 493 (Ct. App. 1997). The Court acknowledged that the presumption did not exist for "sex offenses, such as rape, in which the victim's

the child had attained the age of 18 years, and the child exhibited to the defendant a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that the child had attained the age of 18 years. A defendant who raises this affirmative defense has the burden of proving this defense by the preponderance of the evidence.

actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent." *Id.* at 72 n.2 (quoting *Morissette v. United States*, 342 U.S. 246, 251 n.8 (1952)). The Court explained the rationale for the exception is that a "perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Id.* The Court also noted that pornographic video *producers* may be convicted of a federal crime without proof that they had knowledge of the performer's age because "producers are more conveniently able to ascertain the age of performers" and thus that it "makes sense to impose the risk of error on producers." *Id.* at 76 n.5.

The Supreme Court did not apply the "child victim" exception to the scienter requirement in *X-Citement Video* because the prohibited activities under consideration (transporting, shipping, receiving, distributing or reproducing child pornography) are not ones in which a defendant would usually personally confront, or have the opportunity to personally confront, a child depicted in the material. *See id.* at 72 n.2. The Court explained that "[t]he opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver." *Id.*

Section 948.11, STATS., however, like statutes which prohibit sexual contact with minors and production of child pornography, criminalizes acts in which "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Id.* Kevin acknowledges that there is little doubt in the present case that he knew the ages of the victims. However, Kevin argues that "the exhibition of potentially harmful material on a grander scale

187

makes individual confrontation more problematic." Kevin and amicus curiae contend that, by imposing criminal liability even on those who might reasonably believe their audiences are limited to adults, the statute will cause speakers to censor themselves by either withholding their speech entirely or limiting it to that deemed appropriate for children. This argument fails to recognize a third alternative—simply making a reasonable effort to ascertain the ages of those seeking access to the materials in question, for example, by utilizing age-screening procedures similar to those employed at taverns and gambling establishments. *See* Section 948.11(2)(c).

 Because § 948.11(2)(a), STATS., criminalizes acts where an individual personally confronts, or has the opportunity to personally confront, a specific child, thereby allowing the individual to easily ascertain the child's age, we conclude the statute does not create an unreasonable burden on the individual's First Amendment rights.

## CONCLUSION

Kevin's constitutional right to be confronted with his accuser was not violated by the admission of A.R.'s statement to the social worker. The lack of a scienter requirement in § 948.11(2)(a), STATS., regarding the age of a child exposed to harmful material, does not render the statute unconstitutional on its face. Kevin has presented no basis, therefore, to set aside his convictions.

*By the Court.*—Judgment and order affirmed.