STATE of Wisconsin, Plaintiff-Appellant,

v.

Joel R. ZARNKE, Defendant-Respondent-Petitioner.

Supreme Court

*No. 97–1664–CR. Oral argument October 7, 1998.—Decided February 26, 1999.*

(Also reported in 589 N.W.2d 370.)

For the defendant-respondent-petitioner there were briefs by *Michael R. Cohen* and *Wachowski, Johnson & Cohen, S.C.* Eau Claire and oral argument by *Michael R. Cohen.*

For the plaintiff-appellant the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. The issue before the court is whether Wis. Stat. § 948.05 prohibiting the sexual exploitation of a child violates the First and Fourteenth Amendments to the United States Constitution and Article I, § 3 of the Wisconsin Constitution for failing to require that the State prove that a distributor of sexually explicit materials had knowl-

edge of the minority of the person(s) depicted in the materials. We hold that the statute does violate the federal and state constitutions as it applies to distributors of such materials, and decline to save the statute insofar as it applies to those accused of the proscribed activities of § 948.05(1)(c) which do not entail a personal meeting between the minor depicted and the accused.

I

¶ 2. The defendant was charged with, among other felonies, two counts of sexual exploitation of a child contrary to Wis. Stat. § 948.05(1)(c) (1995–96)[1] for his reproduction and/or distribution of photographs, electronically stored images, and other pictorial reproductions of a child engaging in sexually explicit conduct. Section 948.05 states in relevant part as follows:

> (1) Whoever does any of the following with knowledge of the character and content of the sexually explicit conduct involving the child is guilty of a class C felony.
>
> . . .
>
> (c) Produces, performs in, profits from, promotes, imports into the state, reproduces, advertises, sells, distributes or possesses with intent to sell or distribute, any undeveloped film, photographic negative, photograph, motion picture, videotape, sound recording or other reproduction of a child engaging in sexually explicit conduct.
>
> . . .

---

[1] All references are to the 1995–96 version of the statutes unless otherwise indicated.

121

(3) It is an affirmative defense to prosecution for a violation of this section if the defendant had reasonable cause to believe that the child had attained the age of 18 years, and the child exhibited to the defendant, or the defendant's agent or client, a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that the child had attained the age of 18 years. *A defendant who raises this affirmative defense has the burden of proving this defense by a preponderance of the evidence.*

(Emphasis added.)

¶ 3. The defendant moved to dismiss the sexual exploitation charges on several grounds, including, as is relevant here, that Wis. Stat. § 948.05 is unconstitutional because it does not require that the State prove that the defendant had knowledge of the minority of the person(s) depicted in the sexually explicit materials, but instead impermissibly allocates to the defendant the burden to prove lack of such knowledge by a preponderance of the evidence as an affirmative defense. The circuit court agreed with the defendant, and basing its decision on *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), ruled that § 948.05 was unconstitutional in its entirety and dismissed the two charges.

¶ 4. The State appealed and the court of appeals reversed. *State v. Zarnke*, 215 Wis. 2d 71, 572 N.W.2d 491 (Ct. App. 1997). On appeal, the defendant conceded that the decision of the circuit court for Eau Claire County, Honorable Benjamin D. Proctor, holding the entirety of Wis. Stat. § 948.05 unconstitutional, was in error as to those portions of the statute which regulate the *production* of sexually explicit materials involving minors and which, presumably, involve personal inter-

action between the child-victim and the accused. However, the defendant maintained that the portion of § 948.05(1)(c) addressing the *distribution* of sexually explicit materials involving minors, and which did not involve the personal interaction between the child-victim and the accused, was unconstitutional.

¶ 5. The State agreed with the defendant that the statute was constitutional as applied to the production, but unconstitutional as applied to the distribution, of sexually explicit materials involving children. The State presented the issue for review as one centered upon the extent to which the statute could be saved to avoid dismissal of the charges against the defendant.

¶ 6. The court of appeals agreed with both parties that when an accused did not have the opportunity to personally meet the child-victim, the State must carry the burden to prove, as an element of the offense under Wis. Stat. § 948.05, that a defendant distributor had knowledge of the minority of the child-victim depicted in the sexually explicit material in issue. It based this conclusion on *X-Citement Video*. However, the court wrote that § 948.05 did in fact place that necessary burden upon the State, and, therefore, was not unconstitutional. The court provided further that in the alternative, the statute could be saved by first severing the offending portions and then reading into those same offending portions the requirement that the State prove all the elements of the offense, which would include proof of the defendant's knowledge of the minority of the child-victim.

¶ 7. The defendant appealed and we granted his petition for review. We now reverse the court of appeals' decision. We hold that Wis. Stat. § 948.05 on its face does not set forth the requirement that the

State carry the burden to prove that the defendant had knowledge of the minority of the child-victim depicted in the sexually explicit materials for which the prosecution is being brought. Therefore, the statute as written is unconstitutional as it applies to the distribution of sexually explicit material depicting minors, as well as to the other prohibited conduct which does not entail a personal interaction between the accused and the child-victim.

## II

¶ 8. The constitutionality of a statute is a question of law that we review de novo. *State v. Post*, 197 Wis. 2d 279, 301, 541 N.W.2d 115 (1995). Ordinarily, there is a presumption of constitutionality for a legislative enactment. *Id.* In most circumstances, those challenging the constitutionality of a statute have the burden to prove that the statute is unconstitutional beyond a reasonable doubt. *Norquist v. Zeuske*, 211 Wis. 2d 241, 250, 564 N.W.2d 748 (1997). However, because Wis. Stat. § 948.05 implicates First Amendment rights,[2] the State has the burden of proving

---

[2] "[T]he Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66 (1963). Here we are not considering an obscenity statute, but an analogous demarcation between protected and unprotected speech is involved. The First Amendment is implicated in this question because the "age of the performers is the crucial element separating legal innocence from wrongful conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73. "[N]onobscene, sexually explicit materials involving persons

beyond a reasonable doubt that the statute is constitutional. *State v. Thiel*, 183 Wis. 2d 505, 523, 515 N.W.2d 847 (1994); *City of Madison v. Baumann*, 162 Wis. 2d 660, 668–69, 470 N.W.2d 296 (1991).

¶ 9. The State does *not* argue that the statute is constitutional as it applies to distributors of sexually explicit materials involving children, but rather concedes that it is unconstitutional and argues for saving it. Regardless, we believe that the statute's constitutional infirmities merit our discussion.

## A

¶ 10. Both parties to this appeal agree that the statute places the burden as to the question of the defendant's knowledge of the minority of one or more of the persons depicted in the sexually explicit materials upon the defendant as an affirmative defense. However, the court of appeals independently concluded that for distributors of sexually explicit materials, the burden to prove this knowledge was placed on the State.

¶ 11. The court of appeals held that the legislature did not intend the affirmative defense set forth in Wis. Stat. § 948.05(3) to apply to the violations of Wis. Stat. § 948.05(1)(c) that do not involve a face-to-face involvement with the child-victim. In so holding, the court began with the premise that the legislature has always intended to prevent conviction under § 948.05, and its predecessor in Wis. Stat. § 940.203 (1987–88) (repealed effective July 1, 1989), of one who was reasonably ignorant of the minority of persons depicted in sexually explicit material.

---

over the age of 17 are protected by the First Amendment," *Id.* at 72, while nonobscene, sexually explicit materials involving persons under the age of 18 are not.

125

¶ 12. The court believed that when, in 1987, Wis. Stat. § 940.203 was renumbered as Wis. Stat. § 948.05 and amended by the legislature to shift the burden of proof of knowledge from the State to the defendant, the legislature did not change its underlying policy that those free of guilty knowledge could not be punished for sexual exploitation of a child. *Zarnke*, 215 Wis. 2d at 78. Because the legislature knew that guilty knowledge had been, and continued to be, an element of the offense, the court of appeals believed that the legislature could not have intended the affirmative defense to apply to the instant case because to do so would be unreasonable and absurd—where the defendant did not have a face-to-face involvement with the victim, it would be impossible for the defendant to satisfy the defense. The court agreed with the defendant that one who is not involved in face-to-face exploitation could never satisfy the requirement under the affirmative defense that the child produced suitable documentary evidence of his or her majority. Construing the statute to avoid an unreasonable or absurd result, *Schwartz v. DILHR*, 72 Wis. 2d 217, 222, 240 N.W.2d 173 (1976), the court concluded that the affirmative defense could apply only to those categories of criminal activity in which it is reasonable to conclude that the defendant could have had the opportunity to meet the child-victim face-to-face.

¶ 13. While we agree with the court of appeals that the affirmative defense set out in Wis. Stat. § 948.05(3) is a practical impossibility for distributors of sexually explicit materials, we decline to follow its reasoning and agree instead with both parties that as currently written, the statute does provide the defendant with an affirmative defense as to *all* the crimes chargeable in this statute.

¶ 14. The statute unambiguously places the burden of proving lack of knowledge on the defendant in the affirmative defense provided by Wis. Stat. § 948.05(3). Subsection (3) neither explicitly, nor implicitly, places the burden of proof of the defendant's knowledge upon the State. To the contrary, the statute clearly burdens the defendant with proving his or her reasonable cause to believe that the person depicted had reached the age of majority. Any other reading, no matter how tempting, ignores the plain language of the statute. Therefore, we find that the statute on its face does not allocate to the State the burden to prove that the defendant had knowledge of the minority of the child-victim. Because the statute is clear on its face, without any ambiguity, statutory construction is not appropriate in the first instance. *State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 167, 580 N.W.2d 203 (1998).

## B

¶ 15. Our finding does not resolve the more fundamental question, assumed by the parties and the courts below but not discussed: that is, whether as a constitutional matter, the legislature may define a statute in which the defendant's knowledge of minority is not an element of the offense as it has done so here.[3] We hold that it may not.

---

[3] The legislature explicitly removed knowledge as an element of the offense and provided the defendant with an opportunity to prove lack of knowledge as an affirmative defense. *See* Legislative Council Note, 1987 Wis. Act 332, Wis. Stat. Ann. § 948.05 (West 1996). Therefore, lack of knowledge is not now an element of the offense. "There is a clear distinction [ ] between the elements of [an] offense and the elements of an

¶ 16. It is well-established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). It is equally true that the State may offer a defendant an affirmative defense to a crime charged, and place upon that defendant the burden to prove that defense, so long as the defense does not in fact work to negate one of the elements of the crime charged. *See Patterson v. New York*, 432 U.S. 197 (1977); *Martin v. Ohio*, 480 U.S. 228 (1987).

¶ 17. Prior to 1987, the provisions of Wis. Stat. § 948.05 were embodied in Wis. Stat. § 940.203 (1985–86). Under the earlier section, the State was burdened with proving that a defendant had knowledge of the minority of those involved in the pornography. *See* Wis. Stat. § 940.203 (1985–86). In 1987, the legislature passed 1987 Wis. Act 332, which among other actions involving crimes against children generally, renumbered § 940.203 to the current § 948.05 and amended its language to shift the burden of proof as to the knowledge of the minority of the child-victim from the State to the defendant. *See* Legislative Council Note, 1987 Wis. Act 332, Wis. Stat. Ann. § 948.05 (West 1996).

affirmative defense." *United States v. Falkowski*, 900 F. Supp. 1207, 1214 (D. Alaska 1995) (citation omitted). The defendant in the instant case must disprove knowledge—and the government is not required to prove knowledge as an element of its case. *Cf. id.* (where the defendant has the opportunity to disprove knowledge and consent as an affirmative defense, knowledge and consent are not elements of the crime which the government must prove to establish its case).

¶ 18. While legislatures are presumed to pass constitutional statutes, *Post*, 197 Wis. 2d at 301, there are "constitutional limits beyond which the States may not go" in reallocating "burdens of proof by labeling as affirmative defenses at least some elements of the crimes" that have been defined in their statutes. *Patterson*, 432 U.S. 197, 210. In this regard, the Court in *Patterson* noted the following:

> "[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime." *McFarland v. American Sugar Rfg. Co.*, 241 U.S. 79, 86 (1916). The legislature cannot "validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt." *Tot v. United States*, 319 U.S. 463, 469 (1943). See also *Speiser v. Randall*, 357 U.S., at 523–525. *Morrison v. California*, 291 U.S. 82 (1934), also makes the point with sufficient clarity.

*Id.* With Wis. Stat. § 948.05, the legislature has indeed unconstitutionally allocated to the defendant a burden which must be placed upon the State.

¶ 19. The United States Supreme Court has held that a State may impose strict or absolute criminal liability by defining criminal offenses without any element of scienter. *Smith v. California*, 361 U.S. 147, 150 (1959). However, the State is limited in its use of strict liability statutes, particularly so in the area of expression where "an elimination [of the scienter requirement] may tend to work a substantial restriction on the freedom of speech and of the press." *Id.* Further, while some legal doctrines are usually consistent with the Constitution, at times they "cannot be

applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Id.* at 151. Strict liability is one such doctrine. *Id.* at 150–51; *see also Mishkin v. New York*, 383 U.S. 502, 510 (1965) ("The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity."); *Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1987) ("[A] rule that would impose strict liability on a publisher for false factual assertions would have an undoubted 'chilling' effect on speech. . .that does have constitutional value.") The same is true of laws regulating the sexual exploitation of children. *New York v. Ferber*, 458 U.S. 747, 765 (1982). "[C]riminal responsibility may not be imposed [upon those involved with nonobscene, sexually explicit materials depicting minors] without some element of scienter on the part of the defendant." *Id.*

██

¶ 20. The Court in *Smith* explained the constitutional problems associated with strict liability offenses in the area of speech:

> The appellee and the court below analogize this strict liability penal ordinance to familiar forms of penal statutes which dispense with any element of knowledge on the part of the person charged, food and drug legislation being a principal example. We find the analogy instructive in our examination of the question before us. The usual rationale for such statutes is that the public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors—in fact an absolute standard which will not hear the distributor's plea as to the amount of care he has used.

> [citations omitted] His ignorance of the character of the food is irrelevant. There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller.

*Smith*, 361 U.S. at 152–53; *See also State v. Collova*, 79 Wis. 2d 473, 484–85, 255 N.W.2d 581 (1977)(strict liability statutes have been applied in Wisconsin in " 'regulatory criminal statutes' " where "[t]he persons to whom the regulations are directed are generally in a position to exercise [a] high degree of care.").

¶ 21. With its decision in *X-Citement Video*, the Supreme Court suggested strongly that some level of scienter as to the minority of the child-victim was constitutionally required where there was no reasonable expectation of a face-to-face meeting between an accused and the minor. It wrote that age of minority possessed the status of an elemental fact because "nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment." *X-Citement Video*, 513 U.S. at 72 (citations omitted). "[O]ne would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults. Therefore, the age of the performers is the crucial element separating legal innocence from wrongful conduct." *Id.* at 73. We agree that the age of the performer is an elemental fact, and based upon the Court's decision in *Smith*, find that the government must prove some level of scienter as to the performer's minority. Therefore, to escape our finding that the statute is unconstitutional, a defendant who is in no position to garner the age of

the minor may not be held strictly liable where the individual depicted is in fact a minor.

¶ 22. Wisconsin Stat. § 948.05 is not a strict liability statute, for it is possible for a defendant to escape liability under § 948.05 by proving a lack of knowledge. Strictly speaking, a strict liability offense is one which affords an individual no opportunity to prove a lack of knowledge. However, the current § 948.05, as it applies to distributors, is indistinguishable from a strict liability statute, since it is virtually impossible for a defendant as a distributor to meet his or her burden.

¶ 23. A distributor of pornography may be one step, or many steps, removed from its production, and the further removed the more difficult—the closer to impossible—it is for the distributor to garner the identification required of Wis. Stat. § 948.05(3). We agree with the Supreme Court's observation that "[t]he opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver." *X-Citement Video*, 513 U.S. at 72 n.2. Here, a defendant who is a distributor is never in the position to have the child-victim exhibit to him or her an "official document" that is required of the affirmative defense. We find that this affirmative defense which could never be proved by most of the actors in § 948.05(1)(c) essentially reduces the statute to one which is in effect strict liability. Therefore, we hold that the statute is unconstitutional as it applies to those activities which do not include some interaction between the accused and the child-victim.

¶ 24. While we find that the affirmative defense as provided in Wis. Stat. § 948.05 does not provide the constitutionally required element of scienter, we stop

short of addressing the level of scienter that would withstand scrutiny.

¶ 25. We hold that an essential element of the crime specified in Wis. Stat. § 948.05 must be an accused's knowledge of the minority of the child-victim, that the State must bear the burden of proving some level of scienter as to that essential element where an accused's conduct does not entail a personal meeting with the minor, and that as currently drafted, the legislature has not constitutionally allocated that necessary burden.

### III

¶ 26. "Although this court will strive to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute." *State v. Hall*, 207 Wis. 2d 54, 82, 557 N.W.2d 778 (1997).

¶ 27. The State would have us save Wis. Stat. § 948.05 for application against the defendant by severing the offending portions and then saving those same portions by imposing on them the required State burden. Specifically, the State suggests that we sever the following emphasized language from § 948.05(1)(c):

> "Produces, performs in, *profits from, promotes, imports into the state, reproduces, advertises, sells, distributes, or possesses with intent to sell or distribute*, any undeveloped film, photographic negative, photograph, motion picture, videotape, sound recording or other reproduction of a child engaging in sexually explicit conduct."

(Emphasis supplied.) We understand the parties' objections to the emphasized language arising from their

recognition that none of these activities will generally entail a face-to-face meeting between the accused and the child-victim.

¶ 28. Severance of the offending language of the statute requires a rule of construction specifically authorized by Wis. Stat. § 990.001(11):

> The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.

¶ 29. We recognize that we have the authority to sever the above-emphasized language as the State asks. However, the State does not ask us to sever this language to save the *remaining* provisions. Instead, it makes the unusual request that we sever the language to save the statute as it applies to those same *severed* provisions. To do this, the State asks that we reinsert into the statute this severed language, first imposing upon that language an appropriate element of scienter. In the State's view, by so acting we would read into the statute a constitutional requirement that is not now explicitly present.

¶ 30. In *X-Citement Video*, the Supreme Court supported its construction of a federal statute, 18 U.S.C. § 2822, to require that the government prove the defendant's knowledge of the minority of the person(s) depicted in sexually explicit materials with its "cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *X-Citement*

*Video*, 513 U.S. at 70. This court has similarly supplied statutory deficiencies by court rule in order to save a statute. *See State ex rel. Chobot v. Circuit Court*, 61 Wis. 2d 354, 212 N.W.2d 690 (1973) (saving a deficient statute regulating obscenity by judicially defining the term "obscene"); *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995) (saving a deficient statute to construe it to include the right to request a jury for discharge hearings under Wis. Stat. §§ 980.09 and 980.10).

¶ 31. While when necessary, we have at times severed portions of a statute's language, and at other times have read into a deficient statute a constitutional requirement, the State's request that we save all of Wis. Stat. § 948.05 would require this court to combine two distinct saving doctrines, which we are not inclined to do under the circumstances of this case. During oral arguments the State suggested that this court did combine these two saving measures in *City of Madison v. Nickel*, 66 Wis. 2d 71, 223 N.W.2d 865 (1974) and should do so again here. We will not extend our actions in *Nickel* to this case.

¶ 32. In *Nickel*, this court was called upon to determine the constitutionality of a Madison city ordinance proscribing obscenity. As enacted, the ordinance defined obscenity in accord with the then-current constitutional standards, a point which this court considered to be "an obvious attempt by the Madison Common Council to create an obscenity ordinance consonant with the then-controlling judicial definition of obscenity within constitutional limits." *Id.* at 80. When the constitutional standards were subsequently redefined by *Miller v. California*, 413 U.S. 15 (1973), the ordinance was called into question.

¶ 33. In saving the ordinance, this court severed the portion of the ordinance that, following *Miller*, provided an unconstitutional definition of obscenity. *Id.* at 80. We then supplemented the ordinance using the court's "authoritative judicial construction" and held that the now undefined term "obscene" encompassed the court's definition of the term "obscene" in *Chobot*. *Id.* at 80–81.

¶ 34. *Nickel* is distinguishable from the instant case. When the Supreme Court repudiated the definition of obscenity that had been constitutional prior to *Miller*, the Court stated that regulation of depictions of sexual conduct needed to specifically define the conduct through "applicable state law, as written or *authoritatively construed*." *Nickel*, 66 Wis. 2d at 75 (quoting *Miller*, 413 U.S. at 24).

¶ 35. Following *Miller*, this court in *Chobot* confronted Wisconsin's obscenity statute and found that it was deficient under *Miller* only in that it did not contain an express definition of obscenity as required by that case. *Chobot*, 61 Wis. 2d at 366. In facing the question of whether this court could "save the section by interpretation and supply a constitutional definition of obscenity," *id.*, we found that we had the power to do so, relying upon precedent supporting the supplementation of *deficiencies* to save a statute, *id.* at 367, and upon the *Miller* Court's proposition that a state court could "authoritatively construe" the statute.

¶ 36. *Nickel* presented a more difficult problem than did *Chobot*, for unlike the state statute in *Chobot* which contained no obscenity definition, the ordinance in *Nickel* did define obscenity, albeit in a manner no longer consistent with the constitution. As noted, this court removed the unconstitutional definition, thereby leaving the ordinance without a definition. It then

relied on *Chobot* as support for its authority to supply the now-deficient ordinance with a definition that fell within the boundaries of the constitution.

¶ 37. The instant case differs in two significant ways from this court's actions in *Nickel*. First, severing the offending language will not leave the statute constitutionally deficient as was the case in *Nickel*. Following severance, we will not need to fill a deficiency in order to save the remainder of the statute.

¶ 38. Second, the decision in *Chobot*, from which *Nickel* finds its authority, was subsequently called into question. *State v. Princess Cinema of Milwaukee*, 96 Wis. 2d 646, 292 N.W.2d 807 (1980). In *Princess Cinema*, we found that the same state statute considered and saved in *Chobot* was now unconstitutionally overbroad, albeit based upon a question not reached in the earlier case. Recognizing first that we had the authority to rectify the continuing constitutional infirmities, we declined, "[a]s a matter of policy. . .to further act to rectify the deficiencies in [the] statute[, for the] problems of public policy and the regulation of criminal conduct are for the legislature." *Id.* at 661. This court emphasized that we were "not simply 'giving up' on the establishment of a constitutionally permissible scheme for regulating obscenity. We [were] recognizing that our job is one of interpreting statutes, not redrafting them." *Id.* at 662.

¶ 39. Given that in the *Nickel* decision we satisfied a deficiency in a statute that resulted from a severance, where no such deficiency will follow our severance here, and that *Nickel* itself was based upon a case which we later refused to make aright by the same authority which the State now urges us to invoke, we believe that that case does not control our actions here.

137

¶ 40. Nor do we believe that *X-Citement Video* controls. In *X-Citement Video*, the Court supported its interpretation that a federal statute did require proof as to the defendant's knowledge of the minority of a performer with what it found to be legislative silence on the matter. That is, the Court would "presume a scienter requirement in the absence of *express contrary intent.*" *Id.* at 71–72.

¶ 41. Quite the contrary is true here, as the language of Wis. Stat. § 948.05 is not silent on the scienter requirement, as it explicitly allocates the burden regarding knowledge to the defendant. In addition, legislative history *explicitly* demonstrates a legislative intent to burden the defendant with proof of his or her lack of knowledge. *See* Legislative Council Note, 1987 Wis. Act 332, Wis. Stat. Ann. § 948.05 (West 1996). To read into the statute the requirement that the State bear the burden to prove the defendant's knowledge of minority would be contrary to the legislature's explicit intentions.

¶ 42. At oral argument, the State suggested that the legislature's explicit intent as evinced by legislative history is *not* what appears to be most clear from a reading of that history. Instead, the State suggests that we should consider the legislature's implicit intent, which it believes was really an intent to enact legislation that would allow it to legislate to the limits of the constitution. As its argument goes, when Wis. Stat. § 948.05 was passed in 1987, the Supreme Court's decision in *Ferber* was the last word on the constitutionality of statutes governing sexual exploitation of children, and that the legislature believed in good faith that *Ferber* permitted placing upon the defendant the burden to prove lack of knowledge of the minority of a person depicted in sexually explicit materials. Because

138

the legislature enacted a statute that was constitutional then, we should assume that the legislature *would intend* to place the burden of the defendant's knowledge on the State when that burden is constitutionally required.

¶ 43. We might agree with the State that the legislature's implicit intent was to draft a statute that went to the limits of the constitution. However, that the legislature intends to pass statutes which are constitutional is always our starting point in such an inquiry as this. *See State v. Janssen*, 219 Wis. 2d 362, 580 N.W.2d 260 (1998)(ordinarily, a statute is presumed to be constitutional). But were we to rewrite a statute whenever it failed constitutional muster in order to save it, using any means possible, the legislature would soon realize that it need not be concerned with constitutional limitations: the judiciary could always be relied upon to mend and mold its language to fit within constitutional constraints.

¶ 44. "While a statute should be held valid whenever by any fair interpretation it may be construed to serve a constitutional purpose, courts cannot go beyond the province of legitimate construction to save it, and where the meaning is plain, words cannot be read into it or out of it for the purpose of saving one or other possible alternative." *Hall*, 207 Wis. 2d at 82 (citations omitted). It is well-established that "[w]here the language used in a statute is plain, the court cannot read words into it that are not found. . .even to save its constitutionality, because this would be legislation and not construction." *Mellen Lumber v. Industrial Comm.*, 154 Wis. 114, 120, 142 N.W. 187 (1913), citing *Rogers-Ruger Co. v. Murray*, 115 Wis. 267, 91 N.W. 657 (1902).

¶ 45. Finally, " '[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of . . .' judicially rewriting it". *X-Citement Video*, 513 U.S. at 86 (Scalia, J., dissenting) (quoting *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 841 (1986)). "Otherwise, there would be no such thing as an unconstitutional statute." *X-Citement Video*, 513 U.S. at 86 (Scalia, J., dissenting).

¶ 46. In view of the above discussion, we believe that severing the offending portions of the statute, and then reading into those same portions a burden that the legislature explicitly rejected, would be an act of legislation. The legislature can draft a permissible and constitutionally valid statute. It has shown that it has the ability to do so in drafting former Wis. Stat. § 940.203 (1985–86) and in drafting current Wis. Stat. § 948.12. In § 948.12, for instance, the legislature did enact, as an element to be proven by the State, the requirement that the defendant knew or should have known the minority of the child-victim depicted in the material at issue. The legislature could have done so here as well, if it so intended. To this extent, it is the legislature's job, not this court's, to amend the invalid portion of Wis. Stat. § 948.05(1)(c) to conform to the constitutional dictates of the First Amendment of the United States Constitution and Article I, § 3 of the Wisconsin Constitution.

¶ 47. The severed portion of Wis. Stat. § 948.05(1)(c) cannot be saved. Accordingly, the two counts against the defendant Zarnke which are based on his distribution of sexually explicit materials involving a minor are to be dismissed, for § 948.05(1)(c)

cannot be applied in a constitutional manner to the defendant.

¶ 48. With the removal of the offending language, § 948.05(1)(c) now reads:

> Produces or performs in any undeveloped film, photographic negative, photograph, motion picture, videotape, sound recording or other reproduction of a child engaging in sexually explicit conduct.

We explicitly reserve the question of whether this remaining portion of § 948.05(1)(c) is constitutional.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 49. DAVID T. PROSSER, J. (*dissenting*). The issue in this case is whether Wis. Stat. § 948.05(1)(c) may be construed to require the state to prove that a person charged with distributing photographs or other reproductions of a child engaging in sexually explicit conduct *knew* that the child was a child, i.e., knew that the person in the pictures had not attained the age of 18 years. The majority concludes that such a construction may not be given to § 948.05(1)(c) and "decline[s] to save" portions of the statute, instead holding them unconstitutional. I disagree and respectfully dissent.

## I.

¶ 50. When the constitutionality of a statute is challenged in court, there is normally a strong presumption that the enactment is constitutional, *Treiber v. Knoll*, 135 Wis. 2d 58, 64, 398 N.W.2d 756 (1987); *State v. Cissel*, 127 Wis. 2d 205, 214, 378 N.W.2d 691 (1985), and the party seeking to overcome the pre-

sumption must prove the statute unconstitutional beyond a reasonable doubt. *State v. Janssen*, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998); *State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). However, the burden shifts to the proponent of the statute when the statute infringes on the exercise of First Amendment rights. *State v. Thiel*, 183 Wis. 2d 505, 522–23, 515 N.W.2d 847 (1994); *State v. Kevin L.C.*, 216 Wis. 2d 166, 184, 576 N.W.2d 62 (Ct. App. 1997).

¶ 51. Nonetheless, courts have a duty to uphold statutes when they reasonably can. In *Demmith v. Wisconsin Judicial Conference*, 166 Wis. 2d 649, 664 n.13, 480 N.W.2d 502 (1992), we asserted that "The court must interpret a statute, if at all possible, in a manner that will preserve the statute as a constitutional enactment." In *Browne v. Milwaukee Bd. of School Directors*, 83 Wis. 2d 316, 332, 265 N.W.2d 559 (1978), we said that when a legislative enactment is attacked "the cardinal rule of statutory construction is to preserve a statute and to find it constitutional if it is at all possible to do so." In *State ex rel. Harvey v. Morgan*, 30 Wis. 2d 1, 13, 139 N.W.2d 585 (1966), we declared that "the duty of this court is not to impugn the motives of the legislature, but rather, if possible, to so construe the statute as to find it in harmony with accepted constitutional principles." In *Harvey*, we approvingly quoted *State ex rel. Thomson v. Giessel*, 265 Wis. 558, 565, 61 N.W.2d 903 (1953), for the proposition that "Our search must be for a means of sustaining the act, not for reasons which might require its condemnation." *Harvey*, 30 Wis. 2d at 13.

¶ 52. Again, in *State ex rel. Chobot v. Circuit Court for Milwaukee County*, 61 Wis. 2d 354, 367, 212 N.W.2d 690 (1973), we stated, "[T]his court has the duty to uphold the statute if it can and in the past has

supplied deficiencies to save a statute. See *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N.W.2d 646, where this court granted a judicial hearing in sex deviate cases not provided for by the statute in order to save the statute." This was also our approach in *State v. Post*, 197 Wis. 2d 279, 329, 541 N.W.2d 115 (1995), where the court said, "This court has previously construed deficient statutes to include constitutionally required procedures," and afforded the right to request a jury for discharge hearings under §§ 980.09 and 980.10.[1]

¶ 53. The court's duty was summed up in *State ex rel. Carnation M.P. Co. v. Emery*, 178 Wis. 147, 160, 189 N.W. 564 (1922): "If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. . . .All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court."

¶ 54. We all understand, in the wake of *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), that portions of § 948.05(1)(c) would be unconstitutional if the statute were not construed to require the state to prove that a defendant who had never personally interacted with the exploited child *knew* that the child had not attained the age of 18 years. This scienter element is indispensable. The question then is whether it is "at all possible" to interpret or construe the statute to require this indispensable element, because, if it is

---

[1] *See also State ex rel. Terry v. Schubert*, 74 Wis. 2d 487, 498, 247 N.W.2d 109 (1976); *State ex rel. Farrell v. Stovall*, 59 Wis. 2d 148, 168, 207 N.W.2d 809 (1973); *State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 327, 204 N.W.2d 13 (1973); *State ex rel. Garner v. Gray*, 55 Wis. 2d 574, 589, 201 N.W.2d 163 (1972).

143

"at all possible," this court has a duty to construe the statute accordingly.

## II.

¶ 55. In *X-Citement Video*, the United States Supreme Court was required to interpret Title 18 U.S.C. § 2252 (1988 ed. and Supp. V) which provided, in relevant part:

(a) Any person who—
 (1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—
 (A) the producing of such visual depiction involves *the use of a minor* engaging in sexually explicit conduct; and
 (B) such visual depiction is of such conduct;
 (2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—
 (A) the producing of such visual depiction involves *the use of a minor* engaging in sexually explicit conduct; and
 (B) such visual depiction is of such conduct;

. . . .

shall be punished as provided in subsection (b) of this section. (Emphasis added.)

¶ 56. The Court stated that "The critical determination which we must make is whether the term 'knowingly' in subsections (1) and (2) modifies the

phrase 'the use of a minor' in subsections (1)(A) and (2)(A)." *X-Citement Video*, 513 U.S. at 68. The Court acknowledged that the most natural grammatical reading suggested that the term "knowingly" modified only the surrounding verbs: transports, ships, receives, distributes, or reproduces. "Under this construction," the Court admitted, "the word 'knowingly' would *not* modify the elements of the minority of the performers. . . ." *Id.* (emphasis added). However, the Court construed the statute to provide that linkage "because of the respective presumptions that *some form of scienter is to be implied in a criminal statute even if not expressed*, and that a statute is to be construed where fairly possible so as to avoid substantial constitutional questions." *Id.* at 69 (emphasis added).

¶ 57. Because "the age of the performers is the crucial element separating legal innocence from wrongful conduct," *id.* at 73, the Court concluded that "the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and *to the age of the performers*." *Id.* at 78 (emphasis added).

¶ 58. *X-Citement Video* is the source of the constitutional determination that a defendant in certain prosecutions must know that the person in certain sexually explicit pictures is a child. But *X-Citement Video* is also a model for how courts should interpret statutes to preserve them against constitutional attack.

¶ 59. Another model is *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991). In *Petrone*, this court was called upon to interpret Wis. Stat. § 940.203 (1987–88), the predecessor to § 948.05, which is the very statute under scrutiny here. The defendant was charged with violating § 940.203(2), which provided:

No person may photograph, film, videotape, record the sounds of or display in any way a child engaged in sexually explicit conduct.

¶ 60. Section 940.203(2) did not expressly embody the element of scienter. With that omission, subsection (2) was markedly different from subsections (1), (3), and (4) of the statute because each of those subsections contained the word "knowingly," whereas subsection (2) did not. Hence, the subsection was described by the defendant as deliberately eliminating the constitutionally-required element of scienter. The state disagreed, contending that either the legislature intended scienter to be an element of the crime or the court will supply this deficiency in the statute to uphold its constitutionality. *Petrone*, 161 Wis. 2d at 550–51.

¶ 61. This court agreed, stating that, "The court has interpreted statutes to save them from being declared unconstitutional." *Id.* at 551–52 n.12, citing *State ex rel. Chobot v. Circuit Court for Milwaukee County*, 61 Wis. 2d at 367.

¶ 62. Then the court added: "We agree with the parties that scienter is a constitutionally required element of the offense charged. We need not decide for purposes of this case whether the legislature intended the statute to include the element of scienter or whether this court would read the element of scienter into the statute to enable the statute to pass constitutional muster." *Petrone*, 161 Wis. 2d at 552.

¶ 63. The most recent model for this court is the court of appeals decision in this case. *State v. Zarnke*, 215 Wis. 2d 71, 572 N.W.2d 491 (1997). The court of appeals reviewed the arguments and stated:

146

Scienter, or guilty knowledge, has always been an element of criminal sexual exploitation. More precisely, it has always been the legislature's intent to prevent conviction under § 948.05, STATS., of one who was reasonably ignorant of the actor's minority.

*Id.* at 78.

¶ 64. The court of appeals cited as authority for this statement a drafter's note in § 55 of 1987 Wis. Act 332, the section which created § 948.05. It wrote: "The drafter's note states that the new law retains knowledge as an element of the crime. It also notes that *New York v. Ferber*, 458 U.S. 747, 765 (1982), holds that criminal responsibility may not be imposed for the acts prohibited by the exploitation statute without some element of scienter on the part of the defendant." *Zarnke*, 215 Wis. 2d at 78. This is the same note cited by this court in *Petrone*, 161 Wis. 2d at 551 n.11, where the court said, "[A] recent recodification of sec. 940.203 suggests that scienter was always an element of the offense. . . .The drafter's note to sec. 948.05 declares that the new law 'does retain' knowledge as an element of the crime, thereby implying that sec. 940.203 included an element of scienter or knowledge."[2]

¶ 65. To sum up, *X-Citement Video*, *Petrone*, and the court of appeals decision in *Zarnke* are three mod-

---

[2] Following the decision of the court of appeals in *Zarnke*, the Wisconsin Criminal Jury Instructions Committee approved Wis JI—Criminal 2122 in April, 1998. The jury instruction states:

Sexual exploitation of a child, as defined in § 948.05(1)(c) of the Criminal Code of Wisconsin, is committed by one who distributes any undeveloped film, photographic negative, photograph, motion picture, videotape, sound recording or other reproduction of a child engaged in sexually explicit conduct with knowledge of the character and content of the sexually explicit conduct involving the child.

els for how this court should address the scienter issue in child pornography cases in the face of an arguably-deficient statute.

## III.

¶ 66. This brings us to the matter at hand. In 1988, the legislature recodified a number of statutes relating to crimes and civil offenses against children. 1987 Wisconsin Act 332. Section 940.203 from the 1987–88 session was repealed and recreated in a revised form as § 948.05. The relevant parts of the new statute read as follows:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements are present.
>
> The first element requires that the defendant distributed any (undeveloped film) (photographic negative) (photograph) (motion picture) (videotape) (sound recording) (or other reproduction) of [a child] [ (name of child) ] engaged in sexually explicit conduct.
>
> [Consent by (name of child) is not a defense.]
>
> "Sexually explicit conduct" means actual or simulated (sexual intercourse) (bestiality) (masturbation) (sexual sadism or sexual masochistic abuse) (lewd exhibition of the genitals or pubic area).
>
> The second element requires that [the child] [ (name of child) ] had not attained the age of 18 years.
>
> The third element requires that the defendant knew that the child in the ——— was engaged in ——— and knew that the child had not attained the age of 18 years.
>
> If you are satisfied beyond a reasonable doubt that the defendant distributed any (undeveloped film) (photographic negative) (photograph) (motion picture) (videotape) (sound recording) (or other reproduction) of [a child] [ (name of child) ] engaged in sexually explicit conduct, that the defendant knew that the child was engaged in sexually explicit conduct, and knew that the child had not attained the age of 18 years, you should find the defendant guilty.
>
> If you are not so satisfied, you must find the defendant not guilty.

**948.05 Sexual exploitation of a child.** (1) Whoever does any of the following with knowledge of the character and content of the sexually explicit conduct involving the child is guilty of a Class C felony:

. . .

(b) Photographs, films, videotapes, records the sounds of or displays in any way a child engaged in sexually explicit conduct.

(c) Produces, performs in, profits from, promotes, imports into the state, reproduces, advertises, sells, distributes or possesses with intent to sell or distribute, any undeveloped film, photographic negative, photograph, motion picture, videotape, sound recording or other reproduction of a child engaging in sexually explicit conduct. . . .

(3) It is an affirmative defense to prosecution for violation of this section if the defendant had reasonable cause to believe that the child had attained the age of 18 years, and the child exhibited to the defendant, or the defendant's agent or client, a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that the child had attained the age of 18 years. A defendant who raises this affirmative defense has the burden of proving this defense by a preponderance of the evidence.

¶ 67. The question is whether this overall statutory scheme permits § 948.05(1)(c) to be construed to require the state to prove that a defendant charged with distributing a photograph or other reproduction of a child engaging in sexually explicit conduct *knew* that the child had not attained the age of 18 years. I conclude that it does.

## A.

¶ 68. In this case, the substance of the offense is the distribution of child pornography. If pornography is obscene, it can be lawfully prosecuted under an obscenity statute. If it is not obscene, it is illegal only when it involves the sexually explicit conduct of a child. The same sexually explicit conduct involving an adult is not illegal because the adult cannot be viewed as an exploited victim. In *X-Citement Video*, the Supreme Court declared that "[a]ge of minority in § 2252 indisputably possesses the same status as an elemental fact because nonobscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment. . . . Therefore, the age of the performers is the crucial element separating legal innocence from wrongful conduct." *X-Citement Video*, 513 U.S. at 72–73.

¶ 69. The legislature understood this analysis. At the same time that § 948.05 was created, the legislature also created § 948.12, which reads as follows:

**948.12 Possession of child pornography.** Whoever possesses any undeveloped film, photographic negative, photograph, motion picture, videotape or other pictorial reproduction of a child engaged in sexually explicit conduct under all of the following circumstances is guilty of a Class E felony:

(1) The person knows that he or she possesses the material.

(2) The person knows the character and content of the sexually explicit conduct shown in the material.

(3) *The person knows or reasonably should know that the child engaged in sexually explicit conduct has not attained the age of 18 years.* (Emphasis added.)

The Legislative Council Note following this section reads in part:

> Under the sexual exploitation of a child statute, as revised in this bill [s. 948.05], it is unlawful to be involved in the production or distribution of child pornography, but mere possession, without intent to sell or distribute, is not unlawful. In recognition that pedophiles and other users of child pornography (the "fruits" of child sexual exploitation) often acquire, transfer and exchange these materials outside the commercial marketplace, in ways not fully covered by the child sexual exploitation statute, the new statute contains a total ban on the intentional possession of child pornography. This prohibition against possession is intended to supplement the restrictions in the child sexual exploitation statute and thereby more effectively deter and penalize the sexual abuse of children than is possible under current law.
>
> Under the new statute, if the defendant knowingly possesses the pornographic material, with knowledge of its character and content and under circumstances in which the defendant knew or should have known that the child was younger than 18 years of age, the defendant is guilty of a Class E felony. Criminal intent, as an element of the crime, is indicated by the "knowledge" requirement. Under the criminal code, knowledge requires only that the actor believes that a specified fact exists [s. 939.23(2)].

Legislative Council Note, 1987, Wis. Stat. Ann. § 948.05 (West 1996).

¶ 70. In § 948.12—possession of child pornography—the legislature made it clear that *knowledge* "that the child engaged in sexually explicit conduct has not attained the age of 18 years" is a fundamental

151

element of the offense. The note makes it clear that §§ 948.12 and 948.05 should be read *in pari materia*. That being so, it is very hard to imagine that the legislature intended that simple possession of child pornography—a Class E felony—requires knowledge of age but distribution of child pornography—a Class C felony—does not require knowledge of age. Our legislature must have understood, as the Supreme Court observed in *X-Citement Video*, that "The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver." *X-Citement Video*, 513 U.S. at 72 n.2. It is unreasonable to attribute to the legislature a desire to ensnare persons who lack guilty knowledge. Therefore, the element of scienter as to age should be read into the statute not only to enable the statute to pass constitutional muster but also to reflect the intent of the legislature.

### B.

¶ 71. The majority argues that this scienter element cannot be read into this statute because of a note to § 948.05. Majority op. at 127 n.3, 138. The note to § 948.05 states:

> NOTE: Revises the sexual exploitation of children statute [s. 940.203] to: . . .
>
> 3. Eliminate the knowledge of the age of the child as an element of the crime of child sexual exploitation, which the prosecution has the burden of proving, and recognize, instead, an affirmative defense based on knowledge of the age of the child, which the defendant must raise and prove. Under sub. (3), the defendant has a defense to criminal

liability for violation of the statute, if he or she had reasonable cause to believe that the child victim of sexual exploitation was 18 years of age or older and the child exhibited to the defendant, or the defendant's agent or client, a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that the child had attained the age of 18 years. As an affirmative defense, the defendant has the burden of raising the defense and of proving the defense by a preponderance of the evidence. This affirmative defense is comparable to the affirmative defense recognized in the exposing a child to harmful material statute, as revised in s. 948.11 of this bill.

Legislative Council Note, 1987, Wis. Stat. Ann. § 948.05 (West 1996).

¶ 72. Several responses may be made to this argument. First, the note under § 948.05 is completely accurate in circumstances where a defendant is photographing, filming, videotaping, or recording the sounds of a child engaged in sexually explicit conduct. It is accurate in other situations where the defendant has been in personal contact with the child and may reasonably be required to ascertain the victim's age. This is clear after one examines the final sentence of the Legislative Council Note as provided above: "This affirmative defense is comparable to the affirmative defense recognized in the exposing a child to harmful material statute, as revised in s. 948.11 of this bill."

¶ 73. Wis. Stat. § 948.11(2)(a) (1995–96) provides:

Whoever, with knowledge of the nature of the material, sells, rents, exhibits, transfers or loans to a child any material which is harmful to children,

with or without monetary consideration, is guilty of a Class E felony.

A defendant charged with violating § 948.11 has the burden of proving, as an affirmative defense, that he or she "had reasonable cause to believe that the child had attained the age of 18 years." Wis. Stat. § 948.11(2)(c).[3]

¶ 74. In *State v. Kevin L.C.*, 216 Wis. 2d 166, 576 N.W.2d 62 (Ct. App. 1997), the court of appeals faced a constitutional challenge to § 948.11. As in this case, the defendant argued that the U.S. Supreme Court's holding in *X-Citement Video* required that the court declare § 948.11 unconstitutional for lack of a scienter requirement regarding age. Although the court of appeals acknowledged that § 948.11(2)(a) does not require the state to prove that a defendant knew that the person to whom harmful materials are exhibited or transferred is a child, the court recognized that an element of scienter is not necessary when a "perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Kevin L.C.*, 216 Wis. 2d at 186–87, quoting *X-Citement Video*, 513 U.S. at 72 n.2. The court of appeals thus held:

> Because § 948.11(2)(a), Stats., criminalizes acts where an individual personally confronts, or has the opportunity to personally confront, a specific child, thereby allowing the individual to easily ascertain

---

[3] Wis. Stat. § 948.11(2)(c) provides as follows:

(c) It is an affirmative defense to a prosecution for a violation of this section if the defendant had reasonable cause to believe that the child had attained the age of 18 years, and the child exhibited to the defendant a draft card, driver's license, birth certificate or other official or apparently official document purporting to establish that the child had attained the age of 18 years. A defendant who raises this affirmative defense has the burden of proving this defense by a preponderance of the evidence.

the child's age, we conclude that the statute does not create an unreasonable burden on the individual's First Amendment rights.

¶ 75. The Legislative Council Note following § 948.05 provides that the affirmative defense in the statute is comparable to the affirmative defense provided for in § 948.11. *Kevin L.C.* correctly concludes that § 948.11 only criminalizes acts where an individual personally confronts a child, thereby allowing the individual to easily ascertain the child's age. Therefore, the application of the Legislative Council Note following § 948.05 should be limited to situations where the defendant has been in personal contact with the child and may reasonably be required to ascertain the victim's age. The note does not constrain the court's interpretation of the statute with respect to the statute's criminalization of the distribution of photographs or other reproductions of a child engaging in sexually explicit conduct. Limiting the application of the note to situations where it makes sense is very different from ignoring or repudiating the note.[4]

¶ 76. Second, the court of appeals shrewdly observed that it "is absurd and unreasonable to view the statutory scheme as intending to create a defense that one could never successfully assert." *Zarnke*, 215 Wis. 2d at 79. This observation is based on the fact that the affirmative defense, to be successfully raised, must establish not only that there is "reasonable cause" to

---

[4] In relying on the note as a binding interpretation of the affirmative defense in the statute, the majority apparently believes that the legislature consciously eliminated knowledge of the age of the child as an element of the crime of importing "into the state. . .any. . .sound recording. . .of a child engaging in sexually explicit conduct. . . ." Wis. Stat. § 948.05(1)(c). That the legislature *intended* such a result is highly implausible.

believe that the child has attained the age of 18 years but also that the child produced suitable documentary evidence of majority for the defendant. An inanimate photograph or other reproduction of a child will not produce "a draft card, driver's license, birth certificate or other official or apparently official document" to deceive the defendant into believing that the child depicted is an adult. When viewing a photograph, what you see is what you get.

¶ 77. Third, a blanket application of the note under § 948.05 cannot be reconciled with the note under § 948.12. Possession normally precedes distribution. The legislature has deemed trafficking in child pornography a more serious offense than possessing child pornography. It is counterintuitive to suppose that the more serious offense has intentionally been made easier to prove than the less serious offense.

¶ 78. Finally, an overbroad note which is not an official component of a statute cannot nullify this court's duty if "at all possible" to construe a statute to find it in harmony with accepted constitutional principles. Only statutory language can create the impossibility of reasonable construction.

¶ 79. As I see it, our duty is to read into the statute the element of scienter as to age of the child and to construe § 948.05(3), the affirmative defense, to apply only to those situations in which there has been or could have been personal contact between the defendant and the child. Those are the situations in which the defendant will "raise" the defense. I do not see that the statutory language creates the impossibility of reasonable construction.

156

## IV.

¶ 80. Section 948.05(1) reads:

Whoever does any of the following with knowledge of the character and content of the sexually explicit conduct involving the child is guilty of a Class C felony:. . .

There can be no dispute that this statute has a knowledge requirement with respect to "the character and content of the sexually explicit conduct."

¶ 81. The subject under discussion here is "sexually explicit conduct" involving a child. The character and content of photographs or other reproductions depicting the sexually explicit conduct of small children or prepubescent children is quite different from the character and content of photographs depicting the sexually explicit conduct of adults. One cannot have "knowledge" of the character and content of kiddie porn without knowledge that the "kiddies" involved have not attained the age of 18 years. Knowledge of minority is inherent in knowledge of the character and content of kiddie porn.

¶ 82. By contrast, sexually explicit images of young persons 16 or 17 years of age may be difficult to distinguish from images of young adults. Consequently, it is natural to include knowledge of minority as an element of distributing kiddie porn, and it is imperative to include knowledge of minority as an element when dealing with pictures of post-pubescent children.

¶ 83. The majority's sanitized opinion does not mention that the defendant here was arrested and charged with reproducing, distributing, or possessing with intent to sell or distribute images of young juveniles, described in the criminal complaint as "visu-

ally estimated to be between 5 and 7 years old, involved in sexually explicit poses/conduct." The complaint alleges that the defendant admitted to a 17-year-old boy, to whom he allegedly showed the pictures, that he knew the juveniles in the sexually explicit pictures or images were as young as 5 to 7 years old.

¶ 84. No defendant should be convicted of distributing child pornography without proof beyond a reasonable doubt that the defendant knew the minority of the children in the sexually explicit material. But no defendant should escape prosecution because this court declined to save the statute by giving it a reasonable construction.